## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

RYAN LEWIS
   *Plaintiff,*

  v.

GEORGE SLAIBY, et al.,
   *Defendants.*

No. 3:23-cv-0231 (VAB)

### RULING AND ORDER ON PENDING MOTIONS

Ryan Lewis ("Plaintiff") has sued George Slaiby, Patrick Deely, Ronald Hunt (collectively "Municipal Defendants"), Heather Baker, and Brenda Haws, alleging Fourth Amendment violations under Section 1983, First Amendment violations under Section 1983, civil conspiracy, and state law claims of trespass, and theft.

Mr. Lewis has moved for reconsideration of the Court's Order denying his first motion for leave to amend his Complaint, and has filed two Amended Complaints on the Docket.

Mr. Slaiby, Mr. Deely, and Mr. Hunt have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

Ms. Haws has moved to dismiss the claims against her.

For the following reasons, the Court **DENIES** Mr. Lewis's motion for reconsideration; **GRANTS** Ms. Haws's motion to dismiss; **GRANTS in part** and **DENIES in part** Mr. Slaiby, Mr. Deely, and Mr. Hunt's motion for judgment on the pleadings; and **DENIES** Mr. Lewis leave to amend.

All claims against Ms. Haws are **DISMISSED**.

The motion for judgment on the pleadings is **GRANTED** with respect to all civil conspiracy claims, the unlawful seizure of property claim, the false arrest claim, the malicious

1

prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim. These claims are **DISMISSED**.

The motion for judgment on the pleadings is **DENIED** with respect to the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt.

The Amended Complaints, ECF Nos. 38 and 45 will be struck from the docket. *See* Fed. R. Civ. P. 12(f)(1) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: on its own[.]").

The dismissal of the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim is without prejudice, and to the extent that the deficiencies identified in this Ruling and Order can be remedied, Mr. Lewis may seek leave to file a Third Amended Complaint by **April 18, 2025.**

Any such proposed Third Amended Complaint must include only these claims (the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim) and any of the claims permitted to proceed here, following the denial of the motion for judgment on the pleadings, specifically the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt. No other claims will be permitted in a proposed Third Amended Complaint.

If no such Third Amended Complaint is filed by **April 18, 2025**, this case will proceed on only those claims permitted to proceed following the denial of the motion for judgment on the

pleadings, specifically the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful

seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

During the alleged events, Mr. Slaiby, Mr. Deely, and Mr. Hunt were on-duty law

enforcement officers employed by the Middlebury Police Department. Compl. at 1, ECF No. 1

(Feb.21, 2023) ("Compl.")[1].

Ms. Baker was the ex-wife of Mr. Lewis. *Id.* at 2.

Ms. Haws was a friend of Ms. Baker. *Id.*  at 3.

On February 25, 2020, Ms. Baker and Ms. Haws allegedly arrived at Mr. Lewis's house

to "survey items" intended to be divided due to the divorce between Mr. Lewis and Ms. Baker.

*Id*. at 3.

While Ms. Baker was at the house, a dispute allegedly ensued, causing her to call 911.

Mr. Hunt, Mr. Deely, and another police officer allegedly responded to the call and stayed at the

scene for over 30 minutes. *Id.* With the officers present, Ms. Baker and Mr. Lewis allegedly

surveyed the items in the house. *Id.*

On February 26, 2020, Mr. Lewis allegedly filed a quitclaim deed and tax conveyance

from Ms. Baker, granting him the property rights to the house. *Id.*

On the same day, Ms. Baker allegedly informed Mr. Lewis that she would be coming

back to the home the following day with a police escort to take home items. *Id.* Mr. Lewis

allegedly indicated that he was unable to host a visit due to work, but that he would place all of

---

[1] Due to inconsistent and repeated paragraph numbering, the Court uses page numbers when citing the Complaint.

the "agreed upon" items in the basement, which could be accessed through the garage without going into the house. *Id.*

On the morning of February 27, 2020, Mr. Lewis allegedly left the basement and garage door open for Ms. Baker's entry and blocked the door connecting the basement to the kitchen. *Id.*

At 9:30 a.m. on the same day, Ms. Baker and Ms. Haws allegedly arrived at the house accompanied by Mr. Slaiby. *Id.* At 10:30 a.m., Mr. Slaiby allegedly ascended the basement stairs to the kitchen door, knocked on the door, and having heard no response, "forced the door open and entered the kitchen." *Id.* Mr. Lewis alleges that Mr. Slaiby had no warrant to enter the home. *Id.* at 7.

Mr. Lewis then allegedly entered the kitchen from another part of the house where he saw Mr. Slaiby. *Id.* A dispute between Mr. Slaiby and Mr. Lewis allegedly occurred where Mr. Slaiby "chest-bumped, tackled, body-slammed, and injured" Mr. Lewis. *Id.* at 7. Mr. Slaiby then allegedly handcuffed Mr. Lewis's left wrist and "used the handcuff to inflict significant pain and injury." *Id.* Mr. Slaiby allegedly "did not substantively communicate" to Mr. Lewis prior to using force. *Id.*

During this alleged altercation, Mr. Lewis called 911. *Id.* at 8. Mr. Hunt allegedly responded to Mr. Lewis's call and arrived at the home. *Id.*

When Mr. Hunt allegedly arrived, Mr. Slaiby was allegedly "on top of" Mr. Lewis and had Mr. Lewis's arm twisted behind his back. Mr. Slaiby was allegedly "roughly six feet four inches tall and weighed over 300 pounds" compared to Mr. Lewis who was "five feet nine inches and weighed 154 pounds." *Id.*

Mr. Hunt allegedly ordered Mr. Lewis to put his phone down. *Id.* Mr. Lewis attempted to comply. *Id.* Mr. Hunt then allegedly threatened to use his taser on Mr. Lewis, took out the taser, and pressed the taser against Mr. Lewis's neck, causing "small lacerations and bleeding." *Id.*

Mr. Hunt and Mr. Slaiby allegedly arrested Mr. Lewis "under the supervision" of Mr. Deely. *Id.* at 4

Following his arrest, Mr. Lewis was allegedly "processed at the police station for two hours" and then "taken to Waterbury Hospital and held for over five hours" for an examination at the request of Mr. Slaiby. *Id.* Ms. Baker and Ms. Haws had allegedly requested that Defendants Slaiby, Hunt, and Deely "extend the detention" of Mr. Lewis. *Id.* at 9–10. The Municipal Defendants had allegedly agreed. *Id.*

### A. Procedural History

On February 21, 2023, Mr. Lewis filed a *pro se* Complaint. Compl.

On May 15, 2023, Ms. Baker filed a motion to dismiss. Mot. to Dismiss, ECF No. 21 (May 15, 2023).

On June 29, 2023, Mr. Lewis filed a motion to amend his Complaint. Mot. to Amend/Correct Complaint, ECF No. 27 (June 29, 2023).

On March 22, 2024, the Court granted Ms. Baker's motion to dismiss, dismissing all claims against her, and denied Mr. Lewis's motion to amend the Complaint. Order, ECF No. 29 (March 22, 2024) ("March 22, 2024 Order").

On April 21, 2024, Mr. Lewis filed a motion for reconsideration of the Court's Order granting Ms. Baker's motion to dismiss and denying the motion to amend. Mot. for Reconsideration, ECF No. 30 (April 21, 2024) ("Mot. for Reconsideration").

On August 9, 2024, Mr. Deely, Mr. Hunt, and Mr. Slaiby filed a motion for judgment on

the pleadings and an accompanying memorandum of law. Motion for J. on the Pleadings, ECF No. 32 (Aug. 9, 2024) ("Mot. for J."); Memo. of Law in Supp. of Rule 12(c) Mot., ECF No. 32-1 (Aug 9, 2024) ("Memo. in Supp.")

On December 2, 2024, Mr. Lewis filed an Amended Complaint. Am. Complaint, ECF No. 38 (Dec. 2, 2024) ("Second Am. Compl.").

On December 20, 2024, Mr. Lewis filed a memorandum in opposition to the motion for judgment on the pleadings. Memo. in Opp., ECF No. 41 ("Memo. in Opp.")

On December 23, 2024, Ms. Haws filed a *pro se* motion to dismiss. Memorandum of Law in Support of Mot. to Dismiss, ECF No. 42 (Dec. 23, 2024) ("Mot. to Dismiss").

On January 13, 2025, Mr. Lewis filed a Second Amended Complaint. Second. Am. Complaint, ECF No. 45 (Jan. 13, 2025) ("Third Am. Compl."). On the same day, Mr. Lewis filed a response to Ms. Haw's motion to dismiss. Response Re Memo. in Supp. of Mot. to Dismiss, ECF No. 46 (Jan. 13, 2025) ("Response").

## II.    STANDARD OF REVIEW

### A.  Motion for Reconsideration

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). This standard "ensure[s] the finality of decisions and [] prevent[s] the practice of a losing party examining the decision and then plugging the gaps of a lost motion with additional matters." *Great Am. Ins. Co. v. Zelik*, 439 F. Supp. 3d 284, 286 (S.D.N.Y. 2020) (citation and internal quotation marks omitted); *see Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018)

("Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion."); *Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Reconsideration is warranted only if the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Great Am. Ins. Co.*, 439 F. Supp. 3d at 286 (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks omitted); *see also* D. Conn. L. Civ. R. 7(c)(1) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.").

### B. Rule 12(b)(6) Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d C

### C. Rule 12(c) Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court "employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594

F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

Accordingly, the "complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Id.*; *see also Twombly*, 550 U.S. at 557 ("While a

complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of a cause of action's elements will not do." (internal citations omitted)).

"Judgement on the pleadings 'is appropriate where material facts are undisputed and

where a judgment on the merits is possible merely by considering the contents of the pleadings.'"

*VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339

(S.D.N.Y. 2008) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)),

*aff'd,* 355 F. App'x 507 (2d Cir. 2009). "Thus, a court may consider undisputed allegations of

fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a

motion for judgment on the pleadings to weigh disputed factual allegations." *Lively v. WAFRA*

*Investment Advisory Group, Inc.*, 6 F.4th 293, 302 (2d Cir. 2021).

### D. *Pro Se* Filings

*Pro Se* filings "must be construed liberally and interpreted to raise the strongest

arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting

*Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation

marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing

the "special solicitude" courts afford pro se litigants).

### III.    DISCUSSION

Mr. Lewis alleges Section 1983 claims for 1) civil rights conspiracy against all

Defendants; 2) warrantless entry against Mr. Slaiby; 3) unlawful seizure of person against Mr.

Slaiby; 4) excessive force against Mr. Slaiby and Mr. Hunt; 5) unlawful seizure of property

against Mr. Slaiby; 6) excessive force against Mr. Slaiby and Mr. Hunt; 7) free speech retaliation

against Mr. Slaiby; 8) false arrest against Mr. Slaiby and Mr. Hunt; 9) malicious prosecution

against Mr. Slaiby; 10) unlawful detention and involuntary hospitalization against the Municipal

Defendants; 11) state law trespass against Ms. Haws; and 12) state law civil theft against Ms.

Haws. *See* Compl.

      Mr. Lewis has moved for a reconsideration of the Court's Order dismissing all claims

against Ms. Baker. Mot. for Reconsideration.

      Ms. Haws has moved for dismissal of all claims against her. Mot. to Dismiss.

      Mr. Slaiby, Mr. Hunt, and Mr. Deely have moved for judgment on the pleadings for all

claims alleged against them. Mot. for J.[2]

      Mr. Lewis has filed two amended pleadings on the docket, which in consideration of the

"special solicitude" for *pro se* plaintiffs, the Court will consider as motions to amend. Second

Am. Compl.; Third Am. Compl.

      The Court considers each motion in turn.

### A.  The Motion for Reconsideration

      Mr. Lewis alleges that Ms. Baker conspired with the Municipal Defendants to effectuate

his detention and seize his property. Compl. at 4–12. Ms. Baker moved to dismiss the claims

against her on the grounds that Mr. Lewis did not sufficiently allege a civil conspiracy claim. *See*

Memo. in Supp. of Mot. to Dismiss at 4–7, ECF No. 21-1 (May 15, 2023). In response to Ms.

---

[2] While the motion for judgment on the pleadings also seeks to dismiss any declaratory, and injunctive relief, including but not limited to any attorney's fees and/or expert fees, Memo. in Supp. at 38–40, because some of Mr. Lewis's claims will survive, the Court need not and will not address those issues now. For now, the Court will simply note that, because Mr. Lewis has decided to proceed *pro* se, the awarding of attorney's fees to him, even if he were to prevail, are not permitted as a matter of law. *Kay v. Ehler*, 499 U.S. 432, 435 (1991) (holding that in civil rights claims "a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees").

Baker's motion, Mr. Lewis filed a motion for leave to amend his complaint. Mot. to Amend/Correct Complaint, ECF No. 27 (June 29, 2023). The Court granted Ms. Baker's motion, dismissed all claims against her, and denied Mr. Lewis leave to amend because he attempted to reallege claims against Ms. Baker. March 22, 2024 Order.

Mr. Lewis argues that the Court's Order granting Ms. Baker's motion to dismiss and denying Mr. Lewis's motion to amend should be reconsidered as he "misinterpreted the Fed. R. Civ. P. 8(a)(2) standard of 'a short and plain statement of the claim', causing him to neglect including many pieces of detailed supporting evidence." Mot. for Reconsideration at 3.

The Court disagrees.

Mr. Lewis has not provided any "controlling decisions or data that the court overlooked." *Shrader, Inc.*, 70 F.3d at 257. To hold a private party liable for a Section 1983 conspiracy, a plaintiff must sufficiently allege that the private party "conspire[d] with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005). As the Court explained in its Order, Mr. Lewis's Complaint alleged only "unsupported assertions of a claim of conspiracy" involving Ms. Baker and the police officers. March 22, 2024 Order at 8.

The Court further determined that the proposed amendments to Ms. Lewis's Complaint were futile as it could not "identify any cognizable claims" against Ms. Baker, which Ms. Lewis sought to reassert. *Id.* at 10–11. Nothing in Mr. Lewis's motion for reconsideration points to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790).

11

Accordingly, the motion for reconsideration will be denied.

### B. The Rule 12(b)(6) Motion to Dismiss

Mr. Lewis alleges that Ms. Haws engaged in a civil conspiracy with Mr. Slaiby, Mr. Hunt, and Mr. Deely to conduct an unlawful search and seizure and false arrest in violation of the Fourth Amendment. *See* Compl. He additionally alleges state law claims of trespass and civil theft. *Id.*

Ms. Haws moves to dismiss all claims against her as conclusory and insufficient under Rule 12(b)(6). Mot. to Dismiss at 3. She additionally states that any claims alleged under 18 U.S.C. § 241 must fail as 18 U.S.C. § 241 is a criminal statute that provides no private cause of action. *Id.* at 2.

In opposition, Mr. Lewis argues that the Court should not consider Ms. Haws's motion to dismiss because it is untimely, and is a "memorandum, alone" and not a formal motion. Response at 2. Mr. Lewis also suggests that his filings of two Amended Complaints on the docket have superseded his original Complaint and therefore the motion to dismiss is moot. *See* Second. Am. Compl. at 1.

The Court disagrees.

The Court is "obligated to afford a special solicitude to *pro se* litigants" and recognizes that they "generally lack[] both legal training and experience." *Tracy*, 623 F.3d at 101. In consideration of the special solicitude, the Court finds it appropriate to decide Ms. Haws's motion to dismiss on the merits, despite its untimely filing and title of "memorandum of law." *See, e.g.*, *Johnson v. Maurer*, No. 3:18-cv-01654 (CSH), 2019 WL 2014985, at *1 (D. Conn. May 7, 2019) ("This motion was not timely filed. However, given the special solicitude for *pro se* litigants, the Court has nonetheless examined Plaintiff's motion."); *Robinson v. Harder*, No.

9:21-cv-01322 (DNH/CFH), 2024 WL 1469076, at *4 (N.D.N.Y. Feb. 20, 2024) (considering an untimely *pro se* filing "in light of special solicitude and because [party's] delay did not result in any appreciable harm or prejudice"), *report and rec. adopted*, 2024 WL 1218983 (N.D.N.Y. Mar. 21, 2024).

Additionally, for the reasons explained below, the Court will consider Mr. Lewis's filings of Amended Complaints as motions for leave to amend, and thus the original Complaint remains operative.

In his Complaint, Mr. Lewis alleges conspiracy, in part, under 18 U.S.C. § 241. This is a criminal statute that provides no private cause of action. *See, e.g.*, *Miller v. Semple*, No. 3:18-CV-01769 (JAM), 2019 WL 6307535, at *8 (D. Conn. Nov. 25, 2019) ("Miller alleges violations of 18 U.S.C. §§ 241 and 242. These criminal statutes, however, do not give rise to a cause of action that a private party may allege as a basis for relief in civil court action." (citing *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014))). Any claims brought under 18 U.S.C. § 241 against Ms. Haws thus must be dismissed.

Considering that *pro se* complaints must be "construed 'liberally,'" *Triestman*, 470 F.3d at 477, and that Mr. Lewis invokes Section 1983, however, the Court will also consider Mr. Lewis's conspiracy counts under the Section 1983 standard for civil conspiracy.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) "To survive a motion to dismiss, a plaintiff must allege more than 'conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights.'" *Buari v. City of New York*, 539 F. Supp. 3d 356, 393–

94 (2d Cir. 2021) (quoting *Leon v. Murph*y, 988 F.2d 303, 311 (2d Cir. 1993)); *see id.* ("[A plaintiff] 'must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end,' as well as 'some details of time and place and the alleged effects of the conspiracy.'" (quoting *Romer v. Morenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000))). "A private party involved in a conspiracy with state actors can be liable under § 1983, but to sustain such a claim, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right." *Burke v. APT Found.*, 509 F. Supp. 2d 169, 174 (D. Conn. 2007).

Mr. Lewis fails to plead the required "meeting of the minds" between Ms. Haws and the police officers. He alleges that Ms. Haws "requested" that the police officers detain him. *See Compl.* at 11. But, simply alleging that a private party requested help from law enforcement— *e.g.*, "call[ing] the police for assistance," *Fisk*, 401 F. Supp. 2d at 377, "prov[iding] of information to[,] or summoning of police officers"—is insufficient to bring a Section 1983 conspiracy against a private party. *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) ("The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.") (collecting cases); *see also Serbalik v. Gray*, 27 F. Supp. 2d 127, 131 (N.D.N.Y. 1998) ("[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." (quoting *132 Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 388 (5th Cir.1985), *cert. denied*, 486 U.S. 1027 (1988))).

Mr. Lewis's remaining allegations are merely conclusory statements that Ms. Haws "conspired to deny Ryan Lewis his civil rights." Compl. at 4. Such statements are insufficient to state a claim of conspiracy. *See, e.g.*, *Colon v. Town of West Hartford*, 2001 WL 45464, at *7 (D. Conn. Jan. 5, 2001) (dismissing conspiracy claim when plaintiff "only made vague and conclusory allegations" that private party defendants "collaborate[d]" with state actors); March 22, 2025 Order (dismissing claims against Ms. Baker because Mr. Lewis's conspiracy claims were "nothing more than conclusory allegations").

Having dismissed all federal law claims against Ms. Haws, the Court declines to exercise supplemental jurisdiction over the state law claims against her of trespass and civil theft. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) ("[A] district court 'may decline to exercise supplemental jurisdiction' . . . if the district court 'has dismissed all claims over which it has original jurisdiction.' In all those contexts, federal law is not where the real action is. . . . [T]he court may (and indeed, ordinarily should) kick the case to state court." (quoting 28 U.S.C. § 1367(c))); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see, e.g.*, *Zuro v. Town of Darien,* 432 F. Supp. 3d 118, 130 (D. Conn. 2020) ("Here, because all of the federal claims have been dismissed early in the action, I decline to exercise supplemental jurisdiction over the remaining state law claims.").

Accordingly, all claims against Ms. Haws will be dismissed.

**C.  The Rule 12(c) Motion for Judgment on the Pleadings**

Mr. Lewis alleges Section 1983 claims for 1) civil rights conspiracy against all Defendants; 2) warrantless entry against Mr. Slaiby; 3) unlawful seizure of person against Mr. Slaiby; 4) excessive force against Mr. Slaiby and Mr. Hunty; 5) unlawful seizure of property against Mr. Slaiby; 6) excessive force against Mr. Slaiby and Mr. Hunt; 7) free speech retaliation against Mr. Slaiby; 8) false arrest against Mr. Slaiby and Mr. Hunt; 9) malicious prosecution against Mr. Slaiby; and 10) unlawful detention and involuntary hospitalization against all Municipal Defendants. Compl.

Mr. Slaiby, Mr. Hunt, and Mr. Deely argue that Mr. Lewis has failed to state any plausible claims, and that, in any case, they are protected by qualified immunity.

Mr. Lewis requests that the Court deny the motion in full, argues that the motion was untimely, and that the motion was mooted by his filing of an Amended Complaint on the docket.[3]

The Court considers each argument in turn.

### 1. Timeliness

"Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings '[a]fter pleads are closed' so long as the motion is made 'early enough not to delay trial.'" *CVR Energy*, *Inc. v. Wachtell, Lipton, Rosen, & Katz*, 830 F. App'x 330, 333 n.2 (2d Cir. 2020) (quoting Fed. R. Civ. P. 12(c)). And, any "motion to dismiss for failure to state a claim . . . [that] is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 127 (2d Cir. 2001).

---

[3] The Court addresses Mr. Lewis's arguments regarding the filing of his Amended Complaints in Part III.D. of the Order. For the reasons explained therein, the original Complaint remains the operative Complaint.

Mr. Lewis argues that the motion for judgment on the pleadings is an untimely response to his Complaint, as Mr. Slaiby, Mr. Hunt, and Mr. Deely did not file an answer to the Complaint by the July 14, 2023 deadline. *See* Order, ECF No. 26 (June 15, 2023) (granting motion for extension of time until July 14, 2023 to file responsive pleading).

The Court disagrees.

As no trial date has been set in this case, Defendants' motion has not delayed trial, despite its filing more than 12 months after the response deadline. *See, e.g.*, *CVR Energy, Inc.*, 830 F. App'x at 333 n.2 ("Here, no trial date had been set when defendants made their motion. Accordingly, the district court did not abuse its discretion in deciding the motion."); *Vail v. City of New York,* 65 F. Supp. 3d, 412 (S.D.N.Y. 2014) ("Plaintiff filed his Second Amended Complaint on July 19, 2013. Defendants then filed their Motion approximately seven months later, on February 21, 2014. . . . [A] trial date had not yet been set, so the Court's consideration of Defendant's Motion will have no perceptible effect on any yet-to-be-scheduled trial[.]" (citations omitted)); *Bey v. City of New York*, No. 99 Civ. 3873 (LLM) (RLE), 2010 WL 3910231, at *3 (S.D.N.Y. Sept. 21, 2010) ("The Court has not yet fixed a date for trial, nor have the parties been able to agree on a proposed joint pre-trial order. . . . Thus, Plaintiffs have failed to persuade the Court that Defendants' 12(c) motion was not filed in a timely manner. Furthermore, the Court notes that reaching the merits of Defendants' 12(c) motion serves the interest of judicial economy and may save the parties unnecessary time and expense which otherwise would be incurred during trial." (citations omitted)).

Accordingly, Mr. Slaiby, Mr. Hunt, and Mr. Deely's motion for judgment on the pleadings is timely.

### 2.  The Conspiracy Claims

Mr. Slaiby, Mr. Hunt, and Mr. Deely argue that Mr. Lewis has failed to allege a conspiracy claim. First, Defendants argue that Mr. Lewis cannot bring any claims under 18 U.S.C. § 241 because it is a criminal statute. Memo. in Supp. at 9. Second, Defendants argue that, in any case, Mr. Lewis's claims would fail under the 42 U.S.C. §§ 1983 and 1985 standards.

The Court agrees.

As explained above, any claim brought under 18 U.S.C. § 241, a criminal statute, must fail. *See, e.g.*, *Miller v. Semple*, No. 3:18-CV-01769 (JAM), 2019 WL 6307535, at *8 (D. Conn. Nov. 25, 2019) ("Miller alleges violations of 18 U.S.C. §§ 241 and 242. These criminal statutes, however, do not give rise to a cause of action that a private party may allege as a basis for relief in civil court action." (citing *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014))).

Considered under the standards for claims under 42 U.S.C. §§ 1983 and 1985, Mr. Lewis's allegations are likewise insufficient.

As in the case of the Section 1983 conspiracy claims against Ms. Haws, Mr. Lewis has failed to allege a meeting of minds between the police officers, Ms. Haws, and Ms. Baker. He instead provides mere conclusory statements that the parties "agreed" to detain him *See, e.g.,* Compl. at 10 ("Lieutenant Deely agreed to extend the detention of Ryan"). Such allegations are insufficient to plead a conspiracy claim under § 1983. *See, e.g.*, *Ciambriello v. Cnty. Of Nassua*, 292 F.3d 307, 324–25 (2d Cir. 2002) (affirming dismissal of §1983 conspiracy claims as "strictly conclusory" when plaintiff provided no factual allegations supporting the claim the defendants "agreed with" each other to violate his rights); *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 294 (S.D.N.Y. 2019) (dismissing §1983 conspiracy claim when allegations were "conclusory" and insufficient to "suggest[] any 'meeting of the minds'").

To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d. Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). A § 1985 conspiracy must be motivated by "some racial or perhaps otherwise class-based" discriminatory animus. *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

To the extent that Mr. Lewis's Complaint can be construed as alleging a Section 1985 claim, there are no allegations of any racial or class-based discriminatory animus. Therefore, any conspiracy claims under this statute must be dismissed. *See, e.g.*, *Dolan*, 794 F.3d at 296 (affirming dismissal of section 1985 claim because plaintiff "failed to allege membership in a class protected under Section 1985(3)"); *Brady v. Friedlander*, No. 20-3515-cv, 2021 WL 5872264, at *2 (2d Cir. Dec. 13, 2021) (affirming dismissal of Section 1985 claim when "[plaintiff] failed to allege that any of the Defendant-Appellees acted with 'invidiously discriminating animus'").

Accordingly, all civil conspiracy claims against Mr. Deely, Mr. Hunt, and Mr. Slaiby will be dismissed.

### 3.  The Fourth Amendment Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not

all searches and seizures, but unreasonable searches and seizures." (internal quotation marks and citation omitted)). The touchstone of the Fourth Amendment is reasonableness. *See United States v. Knights*, 534 U.S. 112, 118 (2001); *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61–2 (1992) ("Whether the Amendment was in fact violated is ... [a] question that requires determining if the seizure was reasonable.").

### a.   The Warrantless Entry and Search of Mr. Lewis's House Claim

"The 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). The Fourth Amendment thus "'generally requires the obtaining of a judicial warrant' before a law enforcement officer can enter a home without permission." *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)).

Law enforcement can enter a home without a warrant, however, in cases where "exigent circumstances demand that law enforcement agents act without delay." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990). Additionally, "warrantless entry and search by law enforcement officers does not violate the Fourth Amendment[] . . . if the officers have obtained consent of a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990).

Mr. Lewis alleges that Mr. Slaiby "forced entry" into his kitchen "after knocking on the door and waiting a brief period of time without a response." Compl. at 4. The kitchen door was allegedly "blocked by a wooden chair lodged under the doorknob, plainly indicating the main floor of the home was private and inaccessible." *Id.* at 4–5.

Municipal Defendants argue that Mr. Slaiby entered the home lawfully under the Connecticut Superior Court order granting Ms. Baker access to the home. Memo. in Supp. at 12. Defendants additionally argue "to the extent that the plaintiff seeks to predicate his claim upon the purported trespass by Mr. Slaiby, such conduct in and of itself does not constitute a search under the Fourth Amendment as there exists no factual allegations establishing that Mr. Slaiby's conduct was in conjunction with any attempt to find something or to obtain information." *Id.* at 13.

The Court disagrees.

Defendants rely on *United States v. Jones*, 565 U.S. 400 (2012) to support the proposition that "[t]respass alone does not qualify, but there must be conjoined with that . . . an attempt to find something or to obtain information." *Id.* at 14 (quoting *Jones*, 565 U.S. at 408 n.5). For the purposes of this case, however, their reliance on *Jones* is misplaced.

In *Jones*, the Supreme Court considered the role of common-law trespass in interpreting the Fourth Amendment as applied to the particular instance of a GPS tracker placed on a car. *See Jones*, 565 U.S. at 404 ("We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'"). For the home, however, "a police officer's physical intrusion into an individual's home constitutes a Fourth Amended 'search.'" *Batt v. Buccilli*, 725 F. Appx. 23, 25 (2d Cir. 2018) (citing *Jones*, 565 U.S. at 406–07); *see also Kyllo v. United States*, 533 U.S. 27, 37 (2001) ("[T]he Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained. . . . [A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' was too much, and there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but

the nonintimate rug on the vestibule floor." (quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961))); *Lange v. California*, 594 U.S. 295, 301 (2021) ("That standard "generally requires the obtaining of a judicial warrant" before a law enforcement officer can enter a home without permission." (quoting *Riley v. California*, 573 U.S. 373, 382 (2014))).

Consistent with the broad protections over homes, courts commonly consider whether warrantless entry was reasonable under the Fourth Amendment when police enter homes not to investigate crimes, but to administer aid and assistance. *See, e.g.*, *Caniglia v. Strom*, 593 U.S. 194, 197 (2021) (considering whether warrantless entry was lawful when officers' "efforts [were] to protect petitioner and those around him" and "were distinct from the normal work of criminal investigation"); *Batt*, 725 F. App'x at 24 (considering whether police "welfare check" was a lawful warrantless entry).

And courts rely on the Fourth Amendment to assess police entries into homes in police escort situations similar to the incident at issue here. *See, e.g.*, *Novo v. City of Danbury*, No. 2020 WL 4569891, *5–7 (D. Conn. Aug. 7, 2020) (considering warrantless entry claim when third-party "called the Danbury police for assistance in removing her son's belongings from the home" where she previously resided); *Dunbar v. Avigdor*, No. 3:16-cv-01823 (MPS), 2020 WL 647432 (D. Conn. Feb. 11, 2020) (considering warrantless entry claim when police escorted landlord to tenant's apartment); *Clemons v. Couch*, 3 F.4th 897, 900–03 (6th Cir. 2021) (considering warrantless entry claim based on police escort to enable third-party to retrieve belongings); *Lars St. John v. Cuyahoga Metropolitan Housing Authority*, No. 1:21-cv-2198, 2024 WL 326772, at *3–4 (N.D. Ohio Jan. 26, 2024) (considering warrantless entry claim when police escorted landlord into tenant's apartment).

Additionally, construing "the complaint in the light most favorable to the plaintiff," *York*, 286 F.3d at 125, the Court cannot conclude at this time that apparent or actual third-party consent justified the alleged warrantless entry.

A third-party can consent to a search "when that person (1) has access to the area searched and (2) has either (a) common authority over the area, (b) a substantial interest in the area, or (c) permission to gain access to the area." *Moore v. Andreno*, 505 F. 3d 203, 209 (2d Cir. 2007) (quoting *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992)). A warrantless search can also be lawful based on "a police officer's objectively reasonable belief that he has obtained consent, even if in fact he has not." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). This belief, however, must be based on "mistakes of fact [and] not mistakes of law." *Id.* (quoting 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.3(g), at 175 (4th ed. 2004)).

Even assuming the court order granted Ms. Baker "permission to gain access" to the entire house, Mr. Lewis sufficiently alleges that Ms. Baker did not have "access" under prong one of the third-party consent test to enter any of the rooms beyond the basement and garage. *Compare* Compl. at 4–5 ("The door to [Mr. Lewis's] kitchen was blocked by a wooden chair lodged under the doorknob, plainly indicating the main floor of the home was private and inaccessible without consent.") *with U.S. v. Marte-Cruz*, 629 F. Appx. 89, 92 (2d Cir. 2015) (finding that third-parties had "access" when "the door was usually left open and unlocked[,] . . . [f]amily members had free access to the bedroom[,] . . . [and the defendant] took no steps to restrict that access").

Furthermore, the Complaint does not contain sufficient information about Mr. Slaiby's state of mind to conclude that he reasonably believed he had "apparent access" in the case that

actual access did not exist. *See, e.g.*, *United States v. Brown*, 961 F.2d 1039, 1041 (2d Cir. 1992) ("[*Illinois v.* ]*Rodriguez* would not validate, however, a search premised upon an erroneous view of the law. For example, an investigator's erroneous belief that landladies are generally authorized to consent to a search of a tenant's premises could not provide the authorization necessary for a warrantless search." (citations omitted)). In any event, these are factual issues not appropriate for resolution on a motion for judgment on the pleadings. *See, e.g.*, *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990) ("Insofar as there exists material issues of fact with respect to [Plaintiff's] Fourth Amendment claims, defendant's motion to dismiss . . . must be denied as well.").

Accordingly, the motion for judgment on the pleadings for the warrantless entry claim against Mr. Slaiby will be denied.

### b. The Pre-Arrest Seizure of Mr. Lewis Claim

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) "There are two relevant types of seizures, each of which requires a different level of justification: (i) an investigatory (or *Terry*) stop, which must be based on 'a reasonable suspicion supported by articulable facts that criminal activity may be afoot'; and (ii) an arrest, which must be based on probable cause." *Smith v. Vill. of Brockport*, No. 19-cv-6404 (CJS), 2022 WL 597465, at *11 (W.D.N.Y. Feb. 28, 2022) (quoting *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992)); *see also Grice v. McVeigh*, 873 F.3d 162, 166–67 (2d Cir. 2017) ("Police stops fall into two categories: arrests and Terry stops. Arrests require probable cause, while a police officer may make a Terry stop 'as long as the officer has reasonable suspicion that the person to be

24

detained is committing or has committed a criminal offense.'" (quoting *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016))).

"Physical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure." *Pinto-Montoya v. Mukasey*, 540 F.3d 126, 132 (2d Cir. 2008). Other "[t]elltale signs of a 'seizure' or 'stop' include the 'presence of several officers, the display of a weapon by an officer, some physical [unsearching] touching of the person . . ., or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *United States v. Weaver*, 9 F.4th 129, 142 n.50 (2d Cir. 2021) (quoting *Mendenhall*, 446 U.S. at 554).

Mr. Lewis alleges that Mr. Slaiby "stood in [his] way, preventing him from moving freely within his own home" and then "chest-bumped, tackled, and body-slammed" Mr. Lewis when he "attempted to move freely within his own home." Compl. at 6–7.

Defendants argue that Mr. Lewis has not sufficiently alleged that a seizure occurred prior to his formal arrest because he "does not allege that he was not free to leave the residence" during the incident and does not allege "actual submission" to the officers. Memo. in Supp. at 17.

The Court disagrees.

Here, Mr. Lewis's allegations are sufficient to plead that a pre-arrest seizure occurred. Physical restraints such as tackling and handcuffing to limit a person's movement are quintessential examples of seizure. *See Ozga v. Elliot*, 150 F. Supp. 3d 178, 187 (D. Conn. 2015) ("[A] seizure occurs if the police intentionally terminate one's freedom of movement by means of physical force or restraints. Classic examples of this kind of seizure include a formal arrest or other bodily restraint." (citation omitted)); *California v. Hodari D.*, 499 U.S. 621, 627 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical

force to restrain movement[.]"); *see, e.g.*, *Hodari D.*, 499 U.S. at 624 (mentioning the "unquestioned seizure that occurred when [the officer] tackled Hodari"). And, blocking an individual's path with intent to limit movement can also constitute seizure. *Cf. Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 543 (E.D.N.Y. 2022) (denying motion for summary judgment because "a jury could conclude that, to stop Plaintiff, [the] Officer [] intended to use the police car to block the plaintiff's path"); *Brower v. Cnty. Of Inyo*, 489 U.S. 593, 598 (1989) ("[A] roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur.").

Mr. Lewis need not plead that he submitted to the officers' control, as a "seizure occurs when . . . a person that does not submit to an officer's show of authority is physically restrained." *Ligon v. City of New York*, 925 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (quoting *United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009)); *see also Torres v. Madrid*, 592 U.S. 306, 325 (2021) ("We hold that the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued.").

Furthermore, while Mr. Lewis did not explicitly plead that he was unable to leave his residence, his allegations are sufficient, at this stage, to demonstrate, "in view of all of the circumstances surrounding the incident, [that] a reasonable person would have believed that he was not free to leave," *Mendenhall*, 446 U.S. at 554 (1980), the officer's custody.

Finally, Defendants suggest that any pre-arrest seizure was reasonable because "the limitation of [Mr. Lewis's] free movement within the residence to prevent his proximity to the females therein does not constitute an unnecessary restriction upon his movements." Memo. in Supp. at 17. The Court disregards this argument, as it relies on alleged facts that are beyond and at odds with those in the Complaint that Mr. Lewis was seized merely for "attempt[ing] to move

freely within his own home." Compl. at 7; *see York*,  286 F.3d at 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."); *Kochan v. Kowalski*, 431 F. Supp. 3d 130, 138 (W.D.N.Y. 2019) ("'[I]t is not the Court's function to weigh the evidence that might be presented at trial' when a defendant seeks dismissal." (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999))).

Accordingly, the motion for judgment on the pleadings is denied with respect to the claim of pre-arrest unlawful seizure of Mr. Lewis against Mr. Slaiby.

### c.   The Seizure of Property Claim

"A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty. Ill*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Mr. Lewis alleges that "Mr. Slaiby removed property" from his house without his consent. Compl. at 12.

Defendants argue that Mr. Lewis's claim is "no more than the plaintiff's conclusory statement that an unlawful seizure occurred." Memo. in Supp. at 15.

The Court agrees.

Mr. Lewis states only that "Mr. Slaiby removed property from Ryan Lewis's home without his consent." Compl. at 12. His Complaint includes no factual allegations related to what items were removed, or who owned these items. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)).

Accordingly, the claim of unlawful seizure of property against Mr. Slaiby will be dismissed.

### d. The Excessive Force Claim

When an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one involving the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Such a claim should thus be considered under the Fourth Amendment's "reasonableness" standard. *Id.* at 395. "[T]he question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Assessing reasonableness requires the balancing of the force with "1. the severity of the crime at issue, 2. whether the suspect poses an immediate threat to the safety of the officers or others, and 3. whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015).

Generally, it is the "jury's 'unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct.'" *Palm v. Brooks*, No. 22 CV 9729 (VB), 2024 WL 1908388, at *5 (S.D.N.Y. May 1, 2024) (quoting *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999)). Therefore, courts should only grant motions to dismiss on excessive force claims when "it is because the force used was objectively reasonable as a matter of law." *Id.* (quoting *Phillips v. City of Middletown*, No. 17-cv-5307, 2018 WL 4572971, at *3 (S.D.N.Y. Sept. 24, 2018)); *see also Colon v. City of Rochester*, 419 F. Supp. 3d

586, 600 (W.D.N.Y. 2019) ("As to the federal claims of excessive force, it is questionable whether the force alleged to have been used could fairly be characterized as excessive. But that cannot be determined on this motion to dismiss. . . . [T]he Court cannot determine now, as a matter of law, that the force used was de minimis, as would be required to support dismissal of these claims.").

Mr. Lewis alleges that Mr. Slaiby used excessive force by inflicting pain on his left wrist by using a handcuff and chest-bumping, tackling, and body-slamming him. Compl. at 7. Mr. Lewis additionally alleges that Mr. Hunt used excessive force against him by pressing his taser against Mr. Lewis's neck. Compl. at 8.

Defendants allege that the use of force was objectively reasonable given the totality of the circumstances and that Mr. Lewis's allegations are conclusory. Memo. in Supp. at 23–24.

The Court disagrees.

Mr. Lewis provides specific allegations as to the circumstances surrounding the use of force, the type of force used, and how each officer used force. These factual allegations are beyond conclusory. *Compare* Compl. at 8 ("When Sergeant Hunt entered, Mr. Slaiby was on top of [Mr. Lewis] at the bottom of the stairway[.] . . . Mr. Slaiby had [Mr. Lewis's] left arm twisted[.] . . . Sergeant Hunt then un-holstered his TASER and pressed it against [Mr. Lewis's] neck[.]"), *with Schipke v. Connecticut*, No. 3:17-cv-02087 (JAM), 2019 WL 121783, at *6 (D. Conn. Jan. 7, 2019) ("[Plaintiff] does not allege which officers injured her, how any officer did so, or any of the other circumstances surrounding the alleged use of force. . . . [S]he has not stated a plausible claim for relief against the officers at this time.").

Additionally, the factual allegations in Complaint, taken as true, plausibly demonstrate that the force used was objectively unreasonable. There is nothing in the Complaint to suggest

that Mr. Lewis committed a violent crime or posed a danger to others at the time Mr. Slaiby

allegedly tackled him. *See* Compl. at 7 (alleging that Mr. Lewis was tackled and body-slammed

when he "attempted to move freely within his own home" and that Mr. Slaiby did not

"substantively communicate" within him prior to using force).

At this stage of the case, the Court cannot conclude that, as a matter of law, Mr. Slaiby's

alleged use of his full body weight to subdue Mr. Lewis was objectively reasonable. *See, e.g.,*

*Hammond v. Long*, 727 F. Supp. 3d 85, 95 (D. Conn. 2024) (finding excessive force claim

plausible when officer "slam[ed] someone to the ground with the full force of their body weight,

especially where the purpose of the visit was to deliver a misdemeanor summons and the victim

was not otherwise resisting arrest"); *Kochan v. Kowalski*, 431 F. Supp. 3d 130, 138 (W.D.N.Y.

2019) (finding excessive force claim plausible when plaintiff alleged that officer "violently threw

him to the pavement and then stomped on his head" when "the most serious crime of which [the

p]laintiff was allegedly suspected was a misdemeanor, he was not armed nor did he attempt to

fight the officers").

The Court additionally cannot conclude that, as a matter of law, Mr. Hunt's alleged

jabbing of the taser into Mr. Lewis's neck was objectively reasonable at this time. While

Defendants state that the "facts alleged in the [C]omplaint demonstrate that the [P]laintiff was

not compliant and actively resisted," Memo. in Supp. at 21, Mr. Lewis plainly alleges that he

was not resisting and attempted to comply with police direction. *See, e.g.*, Compl. at 8 ("Sergeant

Hunt ordered [Mr. Lewis] to put his phone down[.] . . . [Mr. Lewis] attempted to secure his

phone with one hand so he could put it down. . . . [Mr. Lewis] finally managed to secure his

phone[.]"). Taking these allegations as true, Mr. Lewis's has sufficiently stated a claim for

excessive force. *See Ketcham v. City of Mount Vernon*, 992 F.3d 144 (2d Cir. 2021) ("[T]he infliction of harm against a restrained and unresisting suspect is excessive force[.]").

Accordingly, the motion for judgment on the pleadings is denied with respect to the excessive force claims against Mr. Slaiby and Mr. Hunt.

### e.  The False Arrest and Malicious Prosecution Claim

Courts "generally look[] to the law of the state in which the arrest occurred" when assessing section 1983 claims for false arrest. *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016). Under Connecticut law, "[t]o prevail on a claim of false arrest, a plaintiff must show that '(1) the defendant intentionally arrested him [or her,] or had him [or her] arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause.'" *Conroy v. Caron*, 275 F. Supp. 3d 328, 348 (D. Conn. 2017) (quoting *Sharnick v. D'Archangelo*, 935 F.Supp.2d 436, 443 (D. Conn. 2013)).

"Similarly, to prevail on a claim of malicious prosecution, a plaintiff must prove that he or she was subject to a Fourth Amendment seizure and also that '(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice.'" *Id.* (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009)).

Mr. Lewis alleges that Mr. Slaiby and Mr. Hunt arrested him without a warrant or "exigent circumstances," constituting false arrest. Compl. at 8–9. Mr. Lewis additionally alleges that Mr. Slaiby is liable for malicious prosecution because he "falsified official documents causing a protective order and criminal charges to be filed." Compl. at 14.

Defendants argue that the Complaint lacks sufficient factual allegations to support a claim for false arrest and malicious prosecution, and that the officers had probable cause to

initiate an arrest. Memo. in Supp. at 24. Defendants additionally allege that Plaintiff did not plead sufficient facts to support an inference that Mr. Slaiby played a role in the prosecution or acted with malice. *Id.* at 28–29.

The Court agrees.

To support their contention that the officers had probable cause to arrest Mr. Lewis, the Defendants rely on a document titled "Police Emergency Examination Request", attached as an exhibit to the memorandum in support. When considering a motion for judgment on the pleadings, however, courts may only consider "documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v. WAFRA Investment Advisory Grp., Inc.*, 6 F.4ᵗʰ 293, 306 (2d Cir. 2021).

The police emergency examination request was neither attached to the Complaint, incorporated by reference, nor is integral to the Complaint.[4] The Court will therefore disregard this document and all references to it. *See Terranova v. New York¸* 144 F. Appx. 143, 145 (2d Cir. 2005) ("[W]hen materials outside the pleadings are offered upon a motion to dismiss . . . a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." (cleaned up)).

---

[4] Mr. Lewis does mention a Police Emergency Examination Request in the Complaint. *See*, Compl. at 4. But, "to be incorporated by reference, the complaint must make 'a clear, definite[,] and substantial reference to the documents.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)). "'[L]imited quotation' of documents not attached to the complaint 'does not constitute incorporation by reference.'" *Id.* (quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)). Mr. Lewis's one line reference to a Police Emergency Examination Request does not meet this standard.

Nonetheless, the allegations in the Complaint are insufficient to state a claim of false arrest or malicious prosecution. While Mr. Lewis provides some details surrounding the events leading up to his arrest, he does not allege sufficient facts related to the reason for his arrest, and vaguely states that he was arrested and prosecuted for "criminal charges." Compl. at 4. Without more, Mr. Lewis has not plausibly plead that the arrest was without probable cause. *See, e.g.*, *Raymond v. Manchester*, No. 3:24-cv-1098, 2014 WL 5010489, at *5 (D. Conn. Dec. 6, 2024) ("Mr. Raymond does not provide any details about the events leading up to his arrest, nor does he state what charges he was arrested for in his Complaint. Mr. Raymond must provide more than allegations that the arrest was 'false' to show that his arrest was without probable cause.").

Under a malicious prosecution claim, the Court must specifically consider probable cause for each charge against the plaintiff. *See D'Angelo v. Kirschner*, 288 F. App'x 724, 727 (2d Cir. 2008) (remanding "to the district court for further consideration as to whether probable cause to initiate and continue prosecution existed" as to all counts Plaintiff was charged with). Thus, as Mr. Lewis has failed to provide any specificities around the alleged charges, he has also failed to state a claim for malicious prosecution.

Accordingly, the false arrest and malicious prosecution cases will be dismissed.

### f.  The Involuntary Hospitalization Claim

"The Fourth Amendment requires that an involuntary hospitalization 'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (quoting *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir.1992)); *Kerman v. City of New York*, 261 F.3d 299, 240 (2d Cir. 2001) ("[Courts] must analyze the police decision to hospitalize [an individual] under the Fourth Amendment's reasonableness standard.").

Mr. Lewis's conspiracy claims involve allegations related to improper detention at the Waterbury Hospital for a mental health evaluation. *See* Compl. at 10. While the Court has dismissed any civil conspiracy claims above, the Court will consider whether Mr. Lewis has properly alleged a claim for involuntary hospitalization against any of the Municipal Defendants. Mr. Lewis specifically alleges that he was "taken to Waterbury Hospital and held for over five hours due to a Police Emergency Examination Request filed by Mr. Slaiby." Compl. at 4. He alleges that Mr. Hunt "agreed" to extend his detention, and that Mr. Deely "misrepresented [Mr. Lewis's] mental status and solicitated false information to support a false mental health accusation against him." *Id.* at 10–11.

The Municipal Defendants argue that Mr. Lewis failed to state a claim related to his alleged involuntary detention at Waterbury Hospital. Specifically, Defendants state that any claim involving the detention of Mr. Lewis for a mental health evaluation must be dismissed because Mr. Lewis did not allege individual involvement by Mr. Slaiby, Mr. Hunt, or Mr. Deely in his hospitalization. Memo. in Supp. at 33.

The Court agrees, in part.

While Defendants state that "plaintiff does not allege that any of the defendants prepared the Police Emergency Examination Request,"[5] Memo. in Supp. at 33, Mr. Lewis plainly alleges that he was "held for over five hours due to a Police Emergency Examination Request filed by Mr. Slaiby." Compl. at 4. Mr. Lewis also alleges that Mr. Slaiby "misrepresented [his] mental health status to support a false mental health accusation" with the purpose of "extend[ing]" his detention. Compl. at 9. This would constitute an allegation of direct involvement on the part of Mr. Slaiby sufficient to support a claim against him. *See, e.g.*, *Barkai v. Nuendorf*, No. 21-c-

---

[5] Defendants again point to the Police Emergency Examination Request attached as an exhibit to the Complaint. As discussed above, the Court will not consider this exhibit.

4060, 2023 WL 2691712, at *20 (S.D.N.Y. Mar. 29, 2023) (stating that an officer could be liable if he had "reason to know" that his false report would lead to the plaintiff's seizure); *Bryant v. Steele*, 25 F. Supp. 3d 233, 239 (E.D.N.Y. 2014) (declining to dismiss claim against crisis team member who "reported to Drs. Vertrees and Margulies that the Plaintiff suffered from a mental illness for which immediate care and treatment in a hospital was appropriate" leading "Drs. Vertrees and Margulies [to] authorize[] the involuntary transport of the Plaintiff").

Mr. Lewis, however, fails to adequately allege that Mr. Slaiby—or any of the Municipal Defendants—lacked probable cause to determine that he should be involuntary hospitalized. Mr. Lewis alleges only that they provided "false" information and provides no additional allegations as to what information was falsified and how such information was false. Compl. at 9. Furthermore, he fails to allege sufficiently detail about his behavior at the time of these reports and his hospitalization. *Cf. Matthews v. City of New York*¸ No. 15-cv-2311 (ALC), 2016 WL 5793414, at *4 (S.D.N.Y. Sept. 30, 2016) ("[P]laintiff alleges that the City Defendants had ample opportunity to observe Plaintiff for themselves and determine whether her behavior match the behavior recounted in the 911 call. Given that Plaintiff also alleges she was calm upon the arrival of the authorities, it is apparent that the alleged facts fail to support a finding of probably cause that Plaintiff was likely to harm herself or others.").

Accordingly, any claims related to the involuntary hospitalization will be dismissed.

### 4.  The First Amendment Free Speech Retaliation Claim

"To prevail on a First Amendment retaliation claim, plaintiff must prove '(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Higgenbotham v. Sylvester*, 741 F. Appx. 28, 31 (2d

Cir. 2018) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). The Plaintiff

must show "with respect to the third element, that his First Amendment rights were 'actually

chilled.'" *Curley*, 268. F. 3d at 73 (quoting *Davis v. Vill. Park II Realty Co.,* 578 F.2d 461, 464

(2d Cir.1978)).

Mr. Lewis alleges that he engaged in protected speech by asking for the court order

authorizing Ms. Baker to enter the house, and that Mr. Slaiby retaliated against him by

threatening to arrest him. Compl. at 5.

Defendants argue that Mr. Lewis's speech was not actually chilled. Memo. in Supp. at

20.

The Court agrees.

"Where a party can show no change in behavior, he has quite plainly shown no chilling

of his First Amendment right to free speech." *Curley*, 268 F.3d at 73. Here, assuming arguendo

that Mr. Lewis engaged in protected speech, he does not allege that his speech changed in any

way in response to Mr. Slaiby's alleged threats to arrest, or even in response to the actual arrest.

He has thus failed to allege that his speech was "actually chilled." *See, e.g.*, *Singer v. Fulton

County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect when plaintiff

continued to publish newspaper after arrest); *Prince v. County of Nassau*, 837 F. Supp. 2d 71, 96

(E.D.N.Y. 2011) ("Here plaintiff has not demonstrated that any conduct on the part of defendants

actually chilled the exercise of his First Amendment rights. In particular, plaintiff has not

proffered any evidence of specific instances in which plaintiff 'desired to exercise [his] First

Amendment rights but was chilled by' the alleged conduct of the defendants." (quoting *Mangano

v. Cambariere*, No. 04 Civ 4980 (SCR) (GAY), 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27,

2007))).

Accordingly, Mr. Lewis's First Amendment retaliation claim against Mr. Slaiby will be dismissed.

### 5. The Qualified Immunity Defense

Qualified immunity, shields government "employees from civil liability under §1983 if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Cornejo v. Bell*, 592 F. 3d 121, 128 (2d Cir. 2010) (internal quotation marks omitted); *see also Luna v. Pico*, 356 F.3d 481, 490 (2d. Cir. 2004) ("The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

"For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019); *see also Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021) ("Even in the absence of binding precedent, a right is clearly established if the contours of the right are sufficiently clear that the unlawfulness is apparent." (cleaned up)). "Specifically, the law must be so clearly established with respect to the '*particular* conduct' and the 'specific context' at issue that 'every reasonable officer would have understood that his conduct was unlawful.'" *Id.* at 68–69 (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Additionally, "[i]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Qualified immunity does not apply "if, on an objective basis, it is obvious that no

37

reasonably competent officer" would have taken the actions of the alleged violation; "but if officers of reasonable competence could disagree on the issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Brosseau v. Haugen*, 542 U.S. 194, 198 (2004)).

Defendants argue they are immune from suit from "plaintiff's claims in their entirety," Memo. in Supp. at 38, as they "did not violate the plaintiff's constitutional rights under the circumstances alleged, and their conduct was otherwise objectively reasonable." *Id.* at 34. Defendants additionally argue that "plaintiff's allegations fall well short of setting forth plausible facts giving rise to any inference that the defendant officers acted intentionally, deliberately, in bad faith, or otherwise with reckless disregard." *Id.*

The Court disagrees.

At the pleading stage, qualified immunity "faces a formidable hurdle." *Horn*, 11 F.4th at 169. The Court may only consider questions of immunity to the extent they "turn on questions of law." *Id.* at 170. And defendants asserting qualified immunity must "show not only that the facts supporting the defense appear on the face of the complaint, but also that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

Defendants have failed to meet this high bar. They provide no claim-specific case law demonstrating that any alleged constitutional violation was not "clearly established" at the time of the events at issue. Additionally, they rely on alleged facts that are beyond those alleged "on the face of the Complaint" to support their argument that the Municipal Defendants' actions were

objectively reasonable. *See, e.g.*, Memo. in Supp. at 37 ("[D]efendants acted objectively reasonably in entering the subject residence, restricting the plaintiff from going after one of the females therein . . . .").

Furthermore, to the extent that Defendants argue they are entitled to qualified immunity because they did not act in bad faith or intentionally harm Mr. Lewis, they misconstrue the standard for qualified immunity. Federal qualified immunity does not "consider the defendant's subjective state of mind—regardless of whether the defendant was acting in good faith or was actually intending to harm the plaintiff." *Henry v. Dinelle*, 929 F. Supp. 2d 107, 122 (N.D.N.Y. 2013); *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("Evidence concerning the defendant's subjective intent is simply irrelevant to that defense [of qualified immunity]."); *cf. Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012) ("In contrast to the federal standard, which is objectively reasonable reliance on existing law, the New York standard for entitlement to qualified immunity has both objective and subjective components." (internal citations and quotation marks omitted)).

Accordingly, Defendants will not be granted qualified immunity on any of Mr. Lewis's surviving claims at this stage of the case.

### D.  Leave to Amend

Plaintiff has filed two Amended Complaints that he states are filed "without leave from the court" under Rule 15(a)(1)(B). Second Am. Compl.; Third Am. Compl. Under Rule 15(a)(1)(B), a plaintiff can amend a pleading "once as a matter of course no later than . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). But Rule 15(a)(1) "does not allow a party to retain a one-time option to 'amend ... as a matter of course' in perpetuity, but limits that

option to the 21-day window." *Azkour v. Bowery Residents' Committee Inc.*, No. 13-cv-5878, 2017 WL 4221456 (S.D.N.Y. 2017).

Ms. Baker filed a motion to dismiss on May 15, 2023, and Mr. Lewis's 21-day window to amend his Complaint as a matter of course thus expired, at the latest, on July 10, 2023. The filing of a responsive motion under Rule 12 by another Defendant does not provide Mr. Lewis with an additional 21-day window to amend his Complaint.[6] *See Trustees of I.B.E.W. Local Union No. 488 Pension Fund v. Norland Electric*, No. 3:11-cv-709 (CSH), 2013 WL 785333, at *2 (D. Conn. Mar. 1, 2013) ("However, focusing on the two subsections of Rule 15(a)(1), the 21–day period to amend 'as of right'— without the Defendant's written consent or the Court's leave — has expired. Specifically, applying Rule 15(a)(1)(A), 21 days have elapsed since the service of Plaintiffs' Complaint on May 12, 2011, and Defendant has served no responsive pleading or motion under Rule 15(a)(1)(B)."); 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 1481 at 661–62 (3d ed. 2010) ("Thus, if only some defendants file responsive pleadings, plaintiff still should be governed by the 21-day amendment period in Rule 15(a)(1)(A) for pleading amendments regarding the nonresponding defendants.").

In consideration of the special solicitude owed to *pro se* plaintiffs, however, the Court will consider Mr. Lewis's proposed amended pleadings as motions for leave to amend.

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) ("Leave to amend pleadings should be freely given when justice requires. Nevertheless, the trial judge's discretion is broad . . . ." (cleaned up)). If a court chooses to deny leave to amend,

---

[6] The Court additionally notes that Rule 15(a)(1)(B) specifies "motions under rule 12(b), (e), or (f)." A motion for judgment on the pleadings occurs under Rule 12(c). Therefore, even if Mr. Lewis's time to amend as a matter of course had not expired, he would not be allowed to amend as a matter of course as a response to the motion for judgment on the pleadings.

however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182

(1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258

(2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be

productive," such as when an amendment is "futile" and "could not withstand a motion to

dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp.

2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue

prejudice, is not enough for a district court to deny leave to amend, the longer the period of an

unexplained delay, the less will be required of the nonmoving party in terms of a showing of

prejudice." (internal quotation marks omitted)).

Here, Mr. Lewis's proposed amendments are futile.

Mr. Lewis maintains his allegations of civil conspiracy against Ms. Baker and Ms. Haws.

While Mr. Lewis adds additional detail, his allegations remain conclusory and fall short of

supporting a claim for conspiracy. *See, e.g.*, Second Am. Compl. ("Haws met in Ryan Lewis's

basement for an hour, discussed Heather's desire to enter Ryan's kitchen and other living spaces

for the purpose of removing property, agreed to do so together, and took several actions in

pursuit of this conspiracy, indeed fully accomplishing the objective of their conspiracy."); Third

Am. Compl. ("On Thursday, February 27, 2020, Officer George Slaiby, Heather Baker, and

Brenda Haws met in Ryan Lewis's basement for an hour, discussed Heather's desire to enter

Ryan's kitchen and other living spaces for the purpose of removing property, agreed to do so

together, and took several actions in pursuit of this conspiracy, indeed fully accomplishing the

objective of their conspiracy."); *see also Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003)

("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of

the minds occurred among any or all of the defendants. Their conspiracy allegation must

therefore fail." (internal citations and quotation marks omitted)).

Moreover, the Court has previously rejected Mr. Lewis's proposed amendments on

similar grounds. *See* March 22, 2025 Order (finding proposed amendment that "Officer George

Slaiby, Heather Baker, and Brenda Haws met at Ryan Lewis's home for an hour and agreed to

enter Ryan's kitchen and other living spaces for the purpose of removing property" too

conclusory to support any claim of civil conspiracy, and thus denying the amendment as futile).

In the same Order, the Court warned Mr. Lewis against repleading any conspiracy claims against

Ms. Baker, and of the likely futility of the conspiracy claims against Ms. Haws. *See id.* ("Mr.

Lewis, however, may seek leave to file a Second Amended Complaint which does not contain

any claims against Ms. Baker. And while the Court does not have before it a motion to address

any of the claims brought against Ms. Haws, for the same reasons stated in this Ruling and Order

with respect to Ms. Baker, any federal claims against Ms. Haws likely would be dismissed, as

well. Thus, to the extent Mr. Lewis files a Second Amended Complaint, he should seriously

consider also omitting any federally based claims against her.").

Accordingly, because the proposed claims against Ms. Baker and Ms. Haws in both

proposed amendended complaints are futile, move for leave to amend is denied. *See Rodriguez v.

City of New York*, No. 10 Civ. 9570 (PKC) (KNF), 2012 WL 178032, at *3 (S.D.N.Y. Jan. 18,

2012) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to

state a legally cognizable claim. . . . In order to state a cognizable claim for a section 1983

conspiracy, a plaintiff must allege, among other things, an agreement . . . to act in concert to

inflict an unconstitutional injury. Here, plaintiff alleges no unconstitutional injury." (internal citations omitted) (cleaned up)).

### IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** Mr. Lewis's motion for reconsideration; **GRANTS** Defendant Haws's motion to dismiss; **GRANTS in part** and **DENIES in part** Defendants Slaiby, Deely, and Hunt's motion for judgment on the pleadings; and **DENIES** Mr. Lewis leave to amend.

All claims against Ms. Haws are **DISMISSED**.

The motion for judgment on the pleadings is **GRANTED** with respect to all civil conspiracy claims, the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim. These claims are **DISMISSED**.

The motion for judgment on the pleadings is **DENIED** with respect to the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt.

The Amended Complaints, ECF Nos. 38 and 45 will be struck from the docket. *See* Fed. R. Civ. P. 12(f)(1) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: on its own[.]").

The dismissal of the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim are without prejudice, and to the extent that the deficiencies identified in this Ruling and Order can be remedied, Mr. Lewis may seek leave to file a Third Amended Complaint by **April 18, 2025.**

Any such proposed Third Amended Complaint must include only these claims (the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim) and any of the claims permitted to proceed here, following the denial of the motion for judgment on the pleadings, specifically the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt. No other claims will be permitted in a proposed Third Amended Complaint.

If no such Third Amended Complaint is filed by **April 18, 2025**, this case will proceed on only those claims permitted to proceed following the denial of the motion for judgment on the pleadings, specifically the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt.

**SO ORDERED** at New Haven, Connecticut, this 14th day of March, 2025.

　_/s/ Victor A. Bolden_　
Victor A. Bolden
United States District Judge

44