## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN LEWIS,<br><br>    *Plaintiff*,<br><br>    v.<br><br>GEORGE SLAIBY, *et al*,<br><br>    *Defendants*. | No. 3:23-cv-00231 (VAB) |

### RULING AND ORDER ON MOTION TO AMEND

Ryan Lewis ("Plaintiff") has sued George Slaiby, Patrick Deely, and Ronald Hunt (collectively "Defendants"), alleging First Amendment, Second Amendment, Fourth Amendment, and Fourteenth Amendment violations under 42 U.S.C. § 1983.

On March 14, 2025, the Court issued an order dismissing some of Mr. Lewis's claims and allowed him until April 18, 2025, to seek leave to file a Third Amended Complaint. On April 18, 2025, Mr. Lewis moved for leave to file a Third Amended Complaint.

For the following reasons, the motion to amend the Complaint is **GRANTED in part and DENIED in part**.

Leave to file the Third Amended Complaint is granted with respect to the following claims: the warrantless entry claim against Mr. Slaiby; the pre-arrest unlawful seizure claim against Mr. Slaiby; the excessive force claim against Mr. Slaiby and Mr. Hunt[1]; and the involuntary hospitalization claim against Mr. Slaiby.

Leave to file the Third Amended Complaint is denied with respect to the following claims, which cannot be brought because of their futility: all claims against Mr. Deely; the

---

[1] These first three claims, the warrantless entry claim against Mr. Slaiby; the pre-arrest unlawful seizure claim against Mr. Slaiby; and the excessive force claim against Mr. Slaiby and Mr. Hunt, were all permitted to proceed from the Second Amended Complaint.

unlawful search, unlawful seizure, and malicious prosecution claims against both Mr. Hunt and Mr. Slaiby; Mr. Lewis's First Amendment right to petition the government, First Amendment retaliation, Second Amendment claim, and Fourteenth Amendment claims; any of Mr. Lewis's claims for declaratory and injunctive relief; and his claim for attorney's fees and expert fees.

By **February 13, 2026,** Mr. Lewis must file a Third Amended Complaint consistent with this Ruling and Order, or the case will proceed on only the claims surviving from the Second Amended Complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

During the alleged events, Mr. Slaiby, Mr. Deely, and Mr. Hunt were on-duty law enforcement officers employed by the Middlebury Police Department. Compl. at 1, ECF No. 1 (Feb. 21, 2023) ("Compl.")[2].

Ms. Baker was the ex-wife of Mr. Lewis. *Id.* at 2.

Ms. Haws was a friend of Ms. Baker. *Id.* at 3.

On February 25, 2020, Ms. Baker and Ms. Haws allegedly arrived at Mr. Lewis's house to "survey items" intended to be divided due to the divorce between Mr. Lewis and Ms. Baker. *Id.* at 3.

While Ms. Baker was at the house, a dispute allegedly ensued, causing her to call 9-1-1. Mr. Hunt, Mr. Deely, and another police officer allegedly responded to the call and stayed at the scene for over 30 minutes. *Id.* With the officers present, Ms. Baker and Mr. Lewis allegedly surveyed the items in the house. *Id.*

---

[2] Due to inconsistent and repeated paragraph numbering, the Court uses page numbers when citing the Complaint.

On February 26, 2020, Mr. Lewis allegedly filed a quitclaim deed and tax conveyance from Ms. Baker, granting him the property rights to the house. *Id.*

On the same day, Ms. Baker allegedly informed Mr. Lewis that she would be coming back to the home the following day with a police escort to take home items. *Id.* Mr. Lewis allegedly indicated that he was unable to host a visit due to work, but that he would place all of the "agreed upon" items in the basement, which could be accessed through the garage without going into the house. *Id.*

On the morning of February 27, 2020, Mr. Lewis allegedly left the basement and garage door open for Ms. Baker's entry and blocked the door connecting the basement to the kitchen. *Id.*

At 9:30 a.m. on the same day, Ms. Baker and Ms. Haws allegedly arrived at the house accompanied by Mr. Slaiby. *Id.* At 10:30 a.m., Mr. Slaiby allegedly ascended the basement stairs to the kitchen door, knocked on the door, and having heard no response, "forced the door open and entered the kitchen." *Id.* Mr. Lewis alleges that Mr. Slaiby had no warrant to enter the home. *Id.* at 7.

Mr. Lewis then allegedly entered the kitchen from another part of the house where he saw Mr. Slaiby. *Id.* A dispute between Mr. Slaiby and Mr. Lewis allegedly occurred where Mr. Slaiby "chest-bumped, tackled, body-slammed, and injured" Mr. Lewis. *Id.* at 7. Mr. Slaiby then allegedly placed Mr. Lewis's left wrist in handcuffs and "used the handcuff to inflict significant pain and injury." *Id.* Mr. Slaiby allegedly "did not substantively communicate" to Mr. Lewis prior to using force. *Id.*

During this alleged altercation, Mr. Lewis called 9-1-1. *Id.* at 8. Mr. Hunt allegedly responded to Mr. Lewis's call and arrived at the home. *Id.*

3

When Mr. Hunt allegedly arrived, Mr. Slaiby was allegedly "on top of" Mr. Lewis and had Mr. Lewis's arm twisted behind his back. Mr. Slaiby was allegedly "roughly six feet four inches tall and weighed over 300 pounds" compared to Mr. Lewis who was "five feet nine inches and weighed 154 pounds." *Id.*

Mr. Hunt allegedly ordered Mr. Lewis to put his phone down. *Id.* Mr. Lewis attempted to comply. *Id.* Mr. Hunt then allegedly threatened to use his taser on Mr. Lewis, took out the taser, and pressed the taser against Mr. Lewis's neck, causing "small lacerations and bleeding." *Id.*

Mr. Hunt and Mr. Slaiby allegedly arrested Mr. Lewis "under the supervision" of Mr. Deely. *Id.* at 4.

Following his arrest, Mr. Lewis was allegedly "processed at the police station for two hours" and then "taken to Waterbury Hospital and held for over five hours" for an examination at the request of Mr. Slaiby. *Id.* Ms. Baker and Ms. Haws had allegedly requested that Defendants Slaiby, Hunt, and Deely "extend the detention" of Mr. Lewis. *Id.* at 9–10. The Defendants allegedly agreed. *Id.*

### B. Procedural History

On February 21, 2023, Mr. Lewis filed a *pro se* Complaint. Compl.

On May 15, 2023, Ms. Baker filed a motion to dismiss. Mot. to Dismiss, ECF No. 21.

On June 29, 2023, Mr. Lewis filed a motion to amend his Complaint. Mot. to Amend/Correct Complaint, ECF No. 27.

On March 22, 2024, the Court granted Ms. Baker's motion to dismiss, dismissing all claims against her, and denied Mr. Lewis's motion to amend the Complaint. Order, ECF No. 29.

On April 21, 2024, Mr. Lewis filed a motion for reconsideration of the Court's Order granting Ms. Baker's motion to dismiss and denying the motion to amend. Mot. for

Reconsideration, ECF No. 30.

On August 9, 2024, Mr. Deely, Mr. Hunt, and Mr. Slaiby filed a motion for judgment on the pleadings and an accompanying memorandum of law. Motion for J. on the Pleadings, ECF No. 32; Memo. of Law in Supp. of Rule 12(c) Mot., ECF No. 32-1.

On December 2, 2024, Mr. Lewis filed an Amended Complaint. Am. Complaint, ECF No. 38.

On December 20, 2024, Mr. Lewis filed a memorandum in opposition to the motion for judgment on the pleadings. Memo. in Opp., ECF No. 41.

On December 23, 2024, Ms. Haws filed a *pro se* motion to dismiss. Memo. of Law in Support of Mot. to Dismiss, ECF No. 42.

On January 13, 2025, Mr. Lewis filed a Second Amended Complaint. Second Am. Compl., ECF No. 45. On the same day, Mr. Lewis filed a response to Ms. Haws's motion to dismiss. Response Re Memo. in Supp. of Mot. to Dismiss, ECF No. 46.

On March 14, 2025, the Court denied Mr. Lewis's motion for reconsideration, granted Ms. Haws's motion to dismiss, and granted in part and denied in part the Defendants' motion for judgment on the pleadings. Order, ECF No. 50 (Mar. 14, 2025) ("Order"). With respect to the motion for judgment on the pleadings, the Court dismissed all of the civil conspiracy claims, the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim, the involuntary detention and hospitalization claim, and the First Amendment retaliation claim. The Court allowed the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt to proceed. *Id.* at 1-2.

The Court also permitted Mr. Lewis to seek leave to file a Third Amended Complaint

by April 18, 2025. In any proposed Third Amended Complaint, the Court instructed Mr. Lewis

that he could only include the claims permitted to proceed in the Court's order, and allowed him

the opportunity to remedy the deficiencies identified in the ruling with respect to the dismissal of

the unlawful seizure of property claim, the false arrest claim, the malicious prosecution claim,

the involuntary detention and hospitalization claim, and the First Amendment retaliation claim.

*Id.* at 2.

On April 18, Mr. Lewis filed a motion to amend the Complaint, and attached as an

exhibit a proposed Third Amended Complaint. Proposed Amended Complaint, ECF No. 52-1

(Apr. 18, 2025) ("Proposed Am. Compl.").

On May 9, 2025, the Defendants filed an objection to Mr. Lewis's motion. Objection re

First Motion to Amend/Correct, ECF No. 54 ("Objection").

On May 23, 2025, Mr. Lewis filed a reply to the Defendants' objection. Reply to

Response to First Motion to Amend/Correct, ECF No. 57 ("Reply").

## II.    STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend

once as a matter of course or, once the period has elapsed, move for leave to file an amended

complaint. Fed. R. Civ. P. 15(a). Parties who fail to file an amended complaint within 15(a)(1)'s

time period, or who seek additional amendments, may seek the consent of their opposing party or

the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when

justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of

the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*,

371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Id.*; *see also Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)" (internal citations omitted)); *Park B. Smith, Inc. v. 5 CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks and citations omitted)).

Although the rules do not require detailed allegations, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

It is also well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

### III.    DISCUSSION

In his Third Amended Complaint, Mr. Lewis alleges Section 1983 claims for 1) warrantless entry against Mr. Slaiby (Claims I and III); 2) free speech retaliation against Mr. Slaiby (Claim II); 3) unlawful seizure of a person against Mr. Slaiby (Claim IV); 4) false imprisonment/involuntary hospitalization against Mr. Slaiby, Mr. Hunt, and Mr. Deely (Claims IV and XI); 5) excessive force against Mr. Slaiby and Mr. Hunt (Claims V, VI, and VII); 6) false arrest against Mr. Slaiby and Mr. Hunt (Claims VIII and IX); 7) unlawful search against Mr. Slaiby, Mr. Hunt, and Mr. Deely (Claim X); 8) unlawful seizure of property against Mr. Slaiby, Mr. Hunt, and Mr. Deely (Claims XII and XIII); and 9) malicious prosecution against Mr. Slaiby, Mr. Hunt, and Mr. Deely (Claim XIV).

In accordance with the Court's March 14, 2025 Order, Mr. Lewis's warrantless entry claim against Mr. Slaiby (Claims I and III), the pre-arrest unlawful seizure claim against Mr. Slaiby (Claim IV), and the excessive force claim against Mr. Slaiby and Mr. Hunt (Claims V, VI, and VII) will proceed. *See* Order at 1-2.

The Defendants argue that the remaining claims are deficient for four reasons.

First, the Defendants argue that the proposed Amended Complaint newly alleges claims of unlawful search, unlawful seizure of property, and malicious prosecution against Defendants Hunt and Deely, and that these claims are barred by the statute of limitations and do not relate back to the original Complaint.

Second, the Defendants argue that the proposed Amended Complaint fails to cure the seizure of property, false arrest, malicious prosecution, involuntary hospitalization, and free speech retaliation claims, in violation of the Court's Order.

Third, the Defendants state that the proposed Amended Complaint improperly alleges new Second and Fourteenth Amendment claims in violation of the Court's Order.

Fourth, the Defendants argue that the Plaintiff's claims for injunctive and declaratory relief, attorney's fees, and expert fees are unavailable, duplicative, or futile.

The Court considers each argument in turn.

### A.  The Newly Alleged Claims Against Defendants Hunt and Deely

Federal Rule of Civil Procedure 15(a)(2) instructs the Court to "freely give leave [to amend] when justice so requires." A court may deny leave, however, based on factors such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of amendment. *See Foman v. Davis*, 371 U.S. at 182. An amendment is futile if, for example, the newly proposed claims would be barred by the applicable statute of limitations. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). In this District, the applicable statute of limitations for Section 1983 claims is three years from the date that the claim accrued. *See Lounsbury v. Jeffries*, 25 F.3d 131, 132-33 (2d Cir. 1994) (holding that the statute of limitations for a § 1983 claim in Connecticut is three years as determined by the state's general or residual personal-injury statute, Conn. Gen. Stat. § 52–577).

A claim asserted after the three-year statute of limitations "relates back" to the date of the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The claims in the original pleading and those in the proposed amended pleading need not be the same. Rather, "the central inquiry is whether adequate notice of the matter raised in the amended pleading has been given to the opposing party. . . by the general fact situation alleged in the original pleading." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d

Cir. 2006); *see id.* ("For example, where an initial complaint alleges a basic scheme of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a natural offshoot of that scheme.") (internal quotation marks omitted).

In his proposed Amended Complaint, Mr. Lewis newly alleges against Defendants Hunt and Deely claims for unlawful search (Claim X); unlawful seizure of property (Claim XIII); and malicious prosecution (Claim XIV). *See* Objection at 3. In his original Complaint, these claims were only made against Mr. Slaiby and the dismissed Defendants, Ms. Baker and Ms. Haws. *See generally* Compl. The Defendants argue that the inclusion of Hunt and Deely is barred by the statute of limitations and the claims do not relate back to the filing of the original Complaint, since the new claims against Mr. Deely and Mr. Hunt are "predicated upon an entirely distinct set of factual allegations" than those included in the original Complaint. Objection at 4-7.

Mr. Lewis responds that in the Defendants' motion for judgment on the pleadings, the Defendants consider themselves as one "legal entity" and therefore "should be charged as one unit for the relevant claims." Reply at 2; *see* Mem. in Supp. of Mot. for J. on the Pleadings, ECF No. 32-1, at 11 (August 9, 2024).

The Court disagrees.

Both Mr. Deely and Mr. Hunt were included as Defendants in the original Complaint, *see* Compl. at 1, and the claims now asserted against them were included in the Plaintiff's original Complaint but asserted only against Mr. Slaiby. *See, e.g., id.* at 4-6, 14. The operative question is then whether the conduct described in Mr. Lewis's original Complaint constitutes the same "general fact situation" alleged in the proposed Amended Complaint, such that Mr. Deely and Mr. Hunt were sufficiently on notice about the additional claims now asserted against them.

Nonetheless, an amendment is also treated as futile "if the proposed claim could not withstand a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6). *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The existing facts do not sufficiently allege that Mr. Deely and Mr. Hunt unlawfully searched Mr. Lewis's home, unlawfully seized Mr. Lewis's property, or maliciously prosecuted Mr. Lewis.[3]

### 1. The Unlawful Search Claim

"[A] police officer's physical intrusion into an individual's home constitutes a Fourth Amendment 'search.'" *Batt v. Buccilli*, 725 F. Appx. 23, 25 (2d Cir. 2018) (citing *United States v. Jones*, 565 U.S. 400, 406–07 (2012)); *see also Kyllo v. United States*, 533 U.S. 27, 37 (2001). A police officer does not engage in an unlawful search where a police officer has consent to enter the home. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). But such a search may not exceed the scope of the consent given. *See Fla. v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents.").

---

[3] The Defendants argue that the Plaintiff impermissibly "seeks to amend his original 15-page Complaint to allege in sum and substance 42 pages of facts, new claims, and claims previously rejected and stricken from the docket by the Court." Objection at 2. In his Amended Complaint, ECF No. 45-1, which was later struck from the record, *see* Order, Mr. Lewis included additional facts to support his allegations. In the Court's Order, the Court did not specify whether those amendments could be made, but allowed Mr. Lewis to cure his deficiencies by including more details to sufficiently allege certain claims in a subsequent proposed Amended Complaint. Accordingly, there is good reason to include Mr. Lewis's amendments alleging additional facts to support his claims. *See* Fed. R. Civ. P. 15(a)(2)) (noting that a party may amend its pleadings with the court's leave, which should freely be given when justice so requires).

In the proposed Amended Complaint, Mr. Lewis admits that on both of the occasions that Mr. Hunt and Mr. Deely entered Mr. Lewis's home, they did so in response to a 9-1-1 call, the first placed by Ms. Baker on February 25, 2020, and a second placed by Mr. Lewis on February 27, 2020. *See* Proposed Am. Compl. at 3-4, 8-10. He alleges no facts indicating that Defendants Hunt and Deely, when responding to the 9-1-1 calls, entered Mr. Lewis's home without his consent, or that they exceeded the scope of this consent.

On February 25, 2020, Mr. Lewis granted Ms. Baker and Ms. Haws entry to the home. Thereafter, a disagreement ensued which caused Ms. Baker to call 9-1-1. Mr. Hunt and another officer responded, and Mr. Deely arrived about thirty minutes later. Mr. Lewis alleges that Mr. Hunt spoke to Ms. Baker and Ms. Haws in the adjoining family room while the other officer spoke with Mr. Lewis in the kitchen. Mr. Deely and Mr. Hunt then accompanied both parties throughout the house for the purpose of surveying the property, but nowhere does the proposed Amended Complaint allege that Defendants Hunt and Deely lacked Mr. Lewis's consent to do so. *Id.* at 4. The facts as alleged do not indicate that Mr. Lewis refused entry to Mr. Hunt or Mr. Deely, or that Hunt and Deely lacked consent or authority to accompany the parties throughout the home.

On February 27, 2020, after an alleged altercation with Mr. Slaiby, Mr. Lewis called 9-1-1 and Defendants Hunt and Deely responded to the call. Once more, Mr. Lewis nowhere alleges that Mr. Hunt and Mr. Deely were refused entry into the home; rather, they were responding to Mr. Lewis's 9-1-1 call asking for assistance within his home. Mr. Lewis was arrested and removed from the home, after which Mr. Slaiby allegedly stated to Ms. Baker and Ms. Haws that they could now "go through the house." *Id.* at 9.

Mr. Lewis does not allege with sufficient particularity that Defendants Hunt and Deely authorized the subsequent search of his house. He only provides unsupported conclusions of Mr. Hunt and Deely's involvement. For example, he states that "Sergeant Hunt then admitted telling Heather and Brenda on Tuesday night, February 25, 2020, what to do in order to attain this result, and Brenda verbally acknowledged this conspiracy," without specifying what Mr. Hunt said to Ms. Baker and Ms. Haws. *Id.* at 10. He also states that Mr. Slaiby, Mr. Hunt, and Mr. Deely "aided and abetted . . . without [Mr. Lewis's] consent," Ms. Baker and Ms. Haws's unlawful search.

A Plaintiff must "[a]t the very least . . . provide some indication of the substance of the contemplated amendment in order to allow the Court to apply the standards governing Rule 15(a)." *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010). The facts alleged by Mr. Lewis do not support a claim of unlawful search against Mr. Hunt and Mr. Deely.

Accordingly, because the proposed amendment cannot withstand a motion to dismiss, the amendment alleging unlawful search against Mr. Hunt and Mr. Deely is futile and will be dismissed.

### 2. The Unlawful Seizure Claim

A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Courts have consistently construed this protection as proscribing only governmental action; it does not apply to a search or seizure effected by a private individual unless that individual is acting as an agent or instrument of the government. *Id.* at 113-14 (citing *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)); *see also Skinner v. Railway*

13

*Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989) ("Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government.").

Mr. Lewis alleges a claim of unlawful seizure of property against Hunt and Deeley, specifically that "[o]n Thursday, February 27, 2020, Heather [Baker], Brenda Haws, and Officer George Slaiby, with the knowledge of Lieutenant Patrick Deely and Sergeant Ronald Hunt, removed property from [Mr. Lewis's] home without his consent while refusing to present or abide by the conditions of the court order." Proposed Am. Compl. at 37.

Mr. Lewis does not sufficiently allege that Mr. Hunt and Mr. Deely participated in the alleged unlawful seizure of his property or authorized it. *See id.* at 10 (noting that Mr. Deely stated that the decision to search the premises and seize property was ultimately up to a judge and stating that Mr. Deely and Mr. Hunt left the house before Mr. Slaiby allegedly oversaw Ms. Baker and Ms. Haws's alleged seizure of Mr. Lewis's property). Mr. Lewis also fails to establish ownership of or entitlement to the items allegedly seized. *See infra* Section III(B)(1).

Accordingly, the amendment alleging unlawful seizure of property against Mr. Hunt and Mr. Deely is futile and will be dismissed.

### 3. The Malicious Prosecution Claim

"[T]o prevail on a claim of malicious prosecution, a plaintiff must prove that he or she was subject to a Fourth Amendment seizure and also that '(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted

with malice.'" *Conroy v. Caron*, 275 F. Supp. 3d 328, 348 (D. Conn. 2017) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009)).

Previously, the Court held that Mr. Lewis only "vaguely state[d] that he was arrested and prosecuted for 'criminal charges'" and that "without more, Mr. Lewis has not plausibly pled that the arrest was without probable cause." Order at 33 (citations omitted). Thus, the Court found that he failed to state a claim for malicious prosecution. In his proposed Amended Complaint, Mr. Lewis provides some additional detail. He adds that Mr. Hunt and Mr. Deely were "consulted" on the Police Emergency Examination Request which allegedly supported his false arrest, Proposed Am. Compl. at 9, he states that he was "transferred by Lieutenant Deely to the custody of the ambulance staff, who then transferred custody to the Emergency Department," *id.* at 12, he specifies that he was charged "with violations of Connecticut General Statutes 53a-167a, interfering/resisting, and 53a-182, disorderly conduct," *id.* at 29, and that "all criminal charges against [him] were dropped pursuant to an unconditional nolle prosequi decision by the Connecticut State's Attorney's office," *id.* at 13.

Mr. Lewis has provided some, but not enough facts to support a claim of malicious prosecution against Mr. Hunt and Mr. Deely. Mr. Lewis fails to specify Mr. Hunt and Mr. Deely's involvement in initiating or continuing the criminal proceedings against him. Mr. Lewis does allege that Mr. Hunt and Mr. Slaiby arrested him under the supervision of Mr. Deely, but he does not sufficiently show that either Mr. Hunt or Deely acted without probable cause or that they impermissibly continued the criminal proceedings against him. *See infra* Section III(B)(2), III(B)(3).

Accordingly, the amendment alleging malicious prosecution against Mr. Hunt and Mr. Deely is futile and will be dismissed.

### 4.   The Other Claims

The Court's Order specified that certain claims, namely 1) the seizure of property claim;

2) the false arrest claim; 3) the malicious prosecution claim; 4) the involuntary hospitalization

claim, and 5) the free speech retaliation claim, were deficient but could be cured in a timely

submitted Third Amended Complaint. *See* Order at 43.

The Defendants argue that Mr. Lewis's proposed Amended Complaint fails to do so.

The Court discusses each claim in turn.

### a.   The Seizure of Property Claim

This Court previously dismissed the claim that Mr. Slaiby unlawfully removed property

from Mr. Lewis's house because his Complaint included "no factual allegations related to what

items were removed, or who owned these items." Order at 27; *see also Twombly*, 550 U.S. at 555

("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." (alteration in original) (citations omitted)).

In his proposed Amended Complaint, Mr. Lewis alleges that Ms. Baker and Mr. Slaiby

seized the following items with the alleged knowledge of Defendants Hunt and Deely: "a

portable crib, wooden crib with mattress, baby swing, portraits, family photos and videos, a

daughter's wedding bouquet, computer backup tapes, thousands of dollars of children's clothing,

three laptops, software CDs, a steam vacuum, several Disney and other VHS and DVDs, several

board games, numerous items of kitchenware, patio furniture, and children's toys." Proposed

Am. Compl. at 37.

16

The Defendants argue that despite detailing the items allegedly removed from the home, Mr. Lewis failed to establish ownership over or entitlement to these items, thereby failing to cure his unlawful seizure of property claim. The Defendants posit that Mr. Lewis could not establish ownership over the items because the property was admittedly marital property "which had not yet been adjudicated/divided by the family court in the on-going divorce proceedings." Objection at 7-8.

Mr. Lewis replies that "the personal property in Plaintiff's home was to be divided, meaning Plaintiff had an ownership stake in all of it" and that "Plaintiff was the owning custodian of all relevant personal property until its disposition, subject to mediation by the court[.]" Reply at 3.

The Court disagrees.

Although Mr. Lewis specifies the items allegedly seized, he has not sufficiently pled his ownership over these items. In his reply to the Defendants' objection, he merely states that he was the "owning custodian" of the personal property, without providing any such support, such as orders from the family court stating his entitlement pending the divorce and mediation proceedings. Without such facts, Mr. Lewis fails to sufficiently plead a claim for unlawful seizure of property. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570)

Accordingly, the amendment alleging unlawful seizure of property will be dismissed.

### b.  The False Arrest Claim

Courts "generally look[] to the law of the state in which the arrest occurred" when assessing Section 1983 claims for false arrest. *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir.

2016). Under Connecticut law, "[t]o prevail on a claim of false arrest, a plaintiff must show that '(1) the defendant intentionally arrested him [or her,] or had him [or her] arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause.'" *Conroy*, 275 F. Supp. 3d at 348 (quoting *Sharnick v. D'Archangelo*, 935 F.Supp.2d 436, 443 (D. Conn. 2013)).

The Court previously held that Mr. Lewis had not plausibly plead that the arrest was without probable cause. In his proposed Amended Complaint, Mr. Lewis adds that he "was charged with violations of Connecticut General Statutes 53a-167a, interfering/resisting, and 53a-182, disorderly conduct" and that "[t]here was no evidence to support probable cause for either charge." Proposed Am. Compl. at 34.

Mr. Lewis states that the Defendants violated policies and state statutes by failing to give lawful orders, that he "did not resist the police in the discharge of their duties because the exercise of Constitutional rights cannot be considered unlawful resistance," and that he "did comply with Sergeant Hunt's unlawful order to put down his phone and put his hands behind his back once Plaintiff had finished his Constitutionally protected activities." Reply at 3-4.

The Defendants argue that the Connecticut Supreme Court has held that "the illegality of an arrest is not a defense to charges of interfering with an officer under Conn. Gen. Stat. § 53a–167a." *Odom v. Matteo*, 772 F. Supp. 2d 377, 397 (D. Conn. 2011) (quoting *State v. Davis*, 261 Conn. 553, 567 (2002)). Because "the very allegations of the proposed Amended Complaint explicitly allege that [Mr. Lewis] actively and passively refused to comply with [the Defendants'] commands and orders," the Defendants argue that Mr. Lewis violated state law, thereby making his arrest lawful.

The Court agrees.

18

Even if Mr. Slaiby's alleged actions were contrary to law, the Complaint details Mr.
Lewis's attempts to circumvent Mr. Slaiby's orders. *See* Proposed Am. Compl. at 6-9 (noting
that Mr. Slaiby repeatedly asked Mr. Lewis if he was interfering, that Mr. Lewis "attempted to
also go upstairs and secure his unlocked filing cabinet and work computer," and that Mr. Lewis
"attempted once more to secure his rights by running around Officer Slaiby through the
adjoining rooms"). Given the "broad language" of § 53a–167a, Mr. Lewis has not sufficiently
pled that Mr. Slaiby lacked probable cause to arrest him. *See State v. Aloi*, 280 Conn. 824, 837
(2007) ("§ 53a–167a necessarily was drafted expansively to encompass a wide range of conduct
that may be deemed to impede or hinder a police officer in the discharge of his or her duties.");
*see also Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) ("An officer's determination
is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if
'officers of reasonable competence could disagree on whether the probable cause test was met.'"
(quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir.1995))).

Accordingly, any false arrest claims against Mr. Slaiby will be dismissed.

### c.  The Malicious Prosecution Claim

"[T]o prevail on a claim of malicious prosecution, a plaintiff must prove that he or she
was subject to a Fourth Amendment seizure and also that '(1) the defendant initiated or
continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in
favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted
with malice.'" *Conroy v. Caron*, 275 F. Supp. 3d 328, 348 (D. Conn. 2017) (quoting *Roberts v.
Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009)).

Mr. Lewis alleges that Mr. Slaiby arrested him inside of his home and later stated on a
phone call that Mr. Lewis was interfering and being disorderly. Mr. Lewis also alleges that Mr.

Slaiby said to Ms. Baker and Ms. Haws that Mr. Lewis was going to be subject to an emergency committal after being processed in order "to buy you guys some time." Proposed Am. Compl. at 9-11. Additionally, Mr. Lewis states that "[o]n July 16, 2021, all criminal charges against [him] were dropped pursuant to an unconditional nolle prosequi decision by the Connecticut State's Attorney's office." *Id.* at 13.

Construing Mr. Lewis's proposed Amended Complaint liberally and accepting the facts alleged as true, it is likely that he has sufficiently pled the first two elements of a claim of malicious prosecution, since he has alleged Mr. Slaiby's involvement in the initiation of his criminal proceedings and has alleged that the proceedings terminated in his favor. *See Roberts v. Babkiewicz*, 582 F.3d 418, 421 (2d Cir. 2009) ("The majority of cases from Connecticut courts interpret Connecticut law so that a nolle prosequi satisfies the favorable termination element as long as the abandonment of the prosecution was not based on an arrangement with the defendant." (internal quotation marks omitted)); *see also Sykes v. Bank of Am.*, 723 F.3d at 403 ("Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" (internal citation omitted)).

"It is well-established that the existence of probable cause is a complete defense to claims of . . . malicious prosecution under both federal and Connecticut law." *Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2015 WL 5306550, at *7 (D. Conn. Sept. 10, 2015). And the probable cause analysis for malicious prosecution is charge specific. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 562 (2024) ("Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate [malicious prosecution] suits like Chiaverini's charge by charge."). As discussed above, *see supra* Section III(B)(2), Mr. Lewis has failed to establish that the Defendants lacked probable cause under Conn. Gen. Stat. § 53a–167a. The question then

becomes whether Mr. Lewis has sufficiently pled that the Defendants lacked probable cause to initiate charges for disorderly conduct under Conn. Gen. Stat. § 53a-182.

Connecticut's disorderly conduct statute states that "[a] person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person . . ." Conn. Gen. Stat. § 53a-182.[4] "Connecticut's Supreme Court has construed this misdemeanor's 'intent' element to mean 'predominant intent.'" *Zalaski v. City of Hartford*, 723 F.3d 382, 390-91 (2d Cir. 2013) (quoting *State v. Indrisano*, 228 Conn. 795, 809 (1994))). Because "the terms 'inconvenience', 'annoyance,' and 'alarm' are relatively elastic," the Connecticut Supreme Court specifies "the predominant intent [must be] to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *Id.* at 809-811.

In the proposed Amended Complaint, Mr. Lewis describes that Mr. Slaiby was acting under the belief that Ms. Baker had legal authority to enter and survey the items in the home. *See* Proposed Am. Compl. at 6. (stating that Mr. Slaiby did not believe that the document produced by Mr. Lewis restricted Ms. Baker's access to the home and stating that Mr. Slaiby believed that the house was still legally co-owned by Ms. Baker).

The proposed Amended Complaint also states that once Ms. Haws went upstairs, Mr. Lewis also attempted to go upstairs, at which time Mr. Slaiby blocked his entrance. Mr. Lewis

---

[4] Mr. Lewis does not specify under which subsection of the disorderly conduct statute he was prosecuted. Given the information in the Complaint, the Court assumes he was subject to one of the cited subsections, although proper identification is immaterial to the Court's analysis.

then attempted to run around Mr. Slaiby through adjoining rooms, and when Mr. Slaiby stepped in front of him, Mr. Lewis once more attempted to go around him.

These facts are not sufficient to sustain a claim that Mr. Slaiby was acting without probable cause when arresting Mr. Lewis under the disorderly conduct statute, since Mr. Slaiby reasonably believed at the time of the events that Mr. Lewis was impeding Ms. Baker's lawful behavior in violation of Section 53a-182. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."); *see also Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ("When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it.").

Because Mr. Lewis has not pled that Mr. Slaiby lacked probable cause to arrest on either charge, he has failed to state a claim for malicious prosecution.

Accordingly, the malicious prosecution claim against Mr. Slaiby will be dismissed.

### d.  The Involuntary Hospitalization Claim

"The Fourth Amendment requires that an involuntary hospitalization 'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (quoting *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992)). Connecticut state law provides the applicable legal standard: "[a]ny police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or

others . . . may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination . . ." Conn. Gen. Stat. § 17a-503(a).

Probable cause requires some reasonable grounds for believing that Mr. Lewis had both a psychiatric disability and was a danger to himself or others. *See Hoyer v. DiCocco*, 457 F. Supp. 2d 110 (D. Conn. 2006), *rev'd on other grounds*, 224 F. App'x 103. 117-18 (2d Cir. 2007) ("Accordingly, the Court finds that it was clearly established that an involuntary hospitalization would violate the Fourth Amendment unless there was reasonable cause to believe both that Hoyer suffered from a psychiatric disability and that she was a danger to herself or society."); *see also Williams v. Lopes*, 64 F. Supp. 2d 37, 42 (D. Conn. 1999) ("Thus, similar to *Glass,* defendants must show that, at the time they encountered plaintiff, it was objectively reasonable for them to believe that she was dangerous to herself or others, or gravely disabled, and in need of immediate care and treatment."); *Kerman v. City of New York,* 374 F.3d 93, 116 (2d Cir. 2004) ("Although the issues of probable cause and qualified immunity are not congruent . . . most of the factual components . . . such as what actions were taken, what information the officers possessed as to [the plaintiff's] mental condition, and whether the officers' perceptions of the circumstances were reasonable in light of the information that was available to them, [are] common to both issues.").

Previously, the Court held that while Mr. Lewis alleged direct involvement on the part of Mr. Slaiby sufficient to support a claim against him, Mr. Lewis did not adequately allege that Mr. Slaiby lacked probable cause to determine that he should be involuntarily hospitalized. Order at 35. Specifically, he did not state what information had been falsified nor did he explain why such information was false. *Id.* He also did not provide detail about his behavior at the time of these reports and his hospitalization. *Id.*

In his proposed Amended Complaint, Mr. Lewis repeats that Mr. Slaiby allegedly falsified a Police Emergency Examination Request to "buy [Ms. Baker and Ms. Haws] some time" and adds that "Officer Slaiby falsely claimed Ryan fought with a police officer, had suicidal thoughts/behaviors, had self-injurious behaviors, barricaded himself in his home, was acting irrational, and was a danger to himself and others." Proposed Am. Compl. at 34.

The Defendants argue that the involuntary hospitalization claim remains insufficiently supported by "vague and conclusory allegations." Objection at 16. Plaintiff responds that he "cannot prove something that did not exist" and that he "has contradicted all of the grounds upon which the Police Emergency Examination Request was submitted." Reply at 4-5.

The Court disagrees, at least for now.

While Mr. Slaiby, Ms. Haws, and Ms. Baker allegedly stated that Mr. Lewis was "not rational" and as not acting like himself, such behavior does not rise to the level of a psychiatric disability, nor do they indicate dangerousness to support a finding of probable cause for involuntary hospitalization. In addition to alleging that Mr. Slaiby falsified the Police Emergency Examination Report and specifying the allegedly false information in that report, Mr. Lewis also alleges that he was cooperative during his arrest and booking as evidenced by video footage and was "released by himself without any finding of mental crisis, disorder, or danger to himself or others." Proposed Am. Compl. at 12.

While conclusory allegations are insufficient, an amendment that contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' will suffice to meet the standard for a motion to amend. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Mr. Lewis has alleged sufficient factual matter to support his claim that Mr. Slaiby did

24

not believe that Mr. Lewis had psychiatric disabilities and was dangerous to himself or others, and thereby lacked probable cause to involuntarily hospitalize him.

Accordingly, the amendment alleging involuntary hospitalization will proceed against Mr. Slaiby.

### 5.    The First Amendment Free Speech Retaliation Claim

"To prevail on a First Amendment retaliation claim, plaintiff must prove '(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Higginbotham v. Sylvester*, 741 F. Appx. 28, 31 (2d Cir. 2018) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

In its previous ruling, the Court dismissed Mr. Lewis's First Amendment retaliation claim because, assuming arguendo that Mr. Lewis engaged in protected speech, he was unable to show that his First Amendment rights were actually chilled. In the proposed Amended Complaint, Mr. Lewis adds: "After Officer Slaiby threatened Ryan with arrest for asking for a valid court order, Ryan attempted to respond and was left speechless as Officer Slaiby raised his voice and aggressively asked three times, "[a]re you interfering? Yes or no?". This act by Officer Slaiby chilled Ryan's speech, leaving him confused and afraid to say anything." Proposed Am. Compl. at 16.

The Defendants argue that the free speech retaliation claim is deficient because Mr. Lewis expressed a private grievance, which is not protected by the First Amendment, and his speech was not actually chilled since he "continued to verbally challenge Officer Slaiby," including once more asserting that he needed a court order. Objection at 17-18. Mr. Lewis argues that his speech "evoking the Fourth Amendment" was of "public concern and political

expression as well as a redress of a public, not private, government official." Reply at 6. He also argues that Mr. Slaiby's alleged verbal and physical retaliation to Mr. Lewis's speech, including the arrest, chilled his speech. *Id.*

The Court disagrees.

Assuming that Mr. Lewis engaged in protected speech, he has not alleged that his speech was actually chilled by Mr. Slaiby's actions. *See Curley*, 268 F.3d at 73 ("Where a party can show no change in behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."). After Mr. Slaiby's multiple interruptions, Mr. Lewis asserted again that he needed a court order. Proposed Am. Compl. at 7. Once Ms. Haws proceeded upstairs, Mr. Lewis continued to object. *Id.* He then told Mr. Slaiby that he was going to call 9-1-1. *Id.* And during his call to 9-1-1, Mr. Lewis "again invoked his Fourth Amendment rights and put Officer Slaiby on notice that he was at risk of a civil rights lawsuit." *Id.* at 8. In October of 2021, Mr. Lewis filed a motion for contempt against Ms. Baker in Connecticut Superior Court for violating the order to survey items in the home. None of the facts alleged suggest that Mr. Lewis's speech was actually chilled.

Accordingly, Mr. Lewis's First Amendment retaliation claim against Mr. Slaiby will be dismissed.

### B. Newly Alleged First, Second, and Fourteenth Amendment Claims

The Defendants note that Mr. Lewis's proposed Amended Complaint violates the Court's Order by newly alleging a First Amendment violation of the right to petition the government and reasserting violations of the Second and Fourteenth Amendment previously disallowed by this Court. Objection at 18-19; *see* Proposed Am. Compl. at 13, 16-17, 33, 38.

Mr. Lewis responds that the protective order issued after his arrest barred him from possessing firearms, thereby supporting a Second Amendment claim.

The Court disagrees.

In its previous Order, the Court allowed the warrantless entry claim against Mr. Slaiby, the pre-arrest unlawful seizure claim against Mr. Slaiby, and the excessive force claim against Mr. Slaiby and Mr. Hunt to proceed. Order at 1-2. The Court made clear that any subsequent proposed amended complaint could only include the permitted claims, but that Mr. Lewis would be allowed the opportunity to remedy only the unlawful seizure of property, false arrest, malicious prosecution, involuntary hospitalization, and First Amendment retaliation claims. *Id.* at 2.

Because the First Amendment right to petition claim, the Second Amendment claim, and the Fourteenth Amendment claim do not comply with the Court's previous ruling, Mr. Lewis cannot include them in his Amended Complaint. The Court also agrees that these claims have no basis in the facts alleged, and would therefore be futile.

Accordingly, Mr. Lewis's First Amendment right to petition the government, Second Amendment, and Fourteenth Amendment claims will be dismissed.

### C. Relief Sought

In his proposed Amended Complaint, Mr. Lewis seeks 1) a permanent injunction enjoining Defendants from searching or seizing Ryan Lewis or any of his property subject to certain exceptions, 2) an order compelling the Defendants to undergo certified annual civil rights training, 3) a declaration warning the Middlebury Police Department not to interfere with Mr. Lewis's firearms permit or application for one, 4) compensatory damages for emotional and

physical harm, 5) punitive damages, and 6) attorney's fees and costs in the case that Mr. Lewis retains counsel.

In their objection to the Plaintiff's motion for leave to amend the Complaint, the Defendants argue that the injunctive relief, declaratory relief, and the attorney's and expert fees sought by Mr. Lewis are either unavailable or duplicative of other relief sought. First, the Defendants argue that because the Town of Middlebury is not a party to the case, the Court cannot order the Middlebury Police Department to refrain from interfering with Mr. Lewis's firearms permit because the Court lacks personal jurisdiction over the municipality and because Mr. Lewis has not alleged any prospective harm. Objection at 20-21. Second, the Defendants argue that Mr. Lewis cannot seek injunctive relief against the Defendants because he is suing them in their individual capacities and because he has not alleged any likelihood of future harm. *Id.* at 22. Finally, the Defendants argue that because Mr. Lewis is proceeding *pro se*, he cannot recover attorney's fees.

The Court agrees.

"A court's in personam order can bind only persons who have placed themselves or been brought within the court's power." *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999) (citing *United States v. Paccione,* 964 F.2d 1269, 1275 (2d Cir.1992) ("[A] court generally may not issue an order against a nonparty.")). Following this ruling, the only parties to this suit are Mr. Lewis, Mr. Slaiby, and Mr. Hunt. Because this Court does not have personal jurisdiction over the Town of Middlebury, and therefore the Middlebury Police Department, it does not have power to issue an order against it.

Additionally, Section 1983 only "permit[s] individuals to seek injunctive relief against state actors in their official capacities and to seek damages against them in their personal

capacities." *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 80 (D. Conn. 1998) (internal citations omitted); *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) ("Plaintiffs cannot obtain prospective injunctive relief from the Defendants sued in their individual capacities as such Defendants would not have the authority to provide such relief in their individual capacities."). Because the Defendants are being sued in their individual capacities, the Court may not grant the injunctive relief sought.

*Pro se* litigants are not entitled to attorney's fees and associated costs under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. *See Kay v. Ehrler*, 499 U.S. 432 (1991); *see also Jones v. Ippoliti*, 727 A.2d 713, 720 (Conn. App. 1999) ("The law of this state is that pro se litigants are not entitled to attorney's fees." (citing *Lev v. Lev,* 524 A.2d 674 (Conn. App. 1987))). If Mr. Lewis later obtains an attorney, he may then petition the Court for such relief.

Accordingly, Mr. Lewis's claims for declaratory and injunctive relief are dismissed, and his claim for attorney's fees and expert fees also is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the motion to amend the Complaint is **GRANTED in part and DENIED in part**.

Leave to file the Third Amended Complaint is granted with respect to the following claims: the warrantless entry claim against Mr. Slaiby; the pre-arrest unlawful seizure claim against Mr. Slaiby; the excessive force claim against Mr. Slaiby and Mr. Hunt; and the involuntary hospitalization claim against Mr. Slaiby.

Leave to file the Third Amended Complaint is denied, and the following claims cannot be brought because of their futility: all claims against Mr. Deely; the unlawful search, unlawful seizure, and malicious prosecution claims against both Mr. Hunt and Mr. Slaiby; Mr. Lewis's

First Amendment right to petition the government, First Amendment retaliation, Second

Amendment claim, and Fourteenth Amendment claims; any of Mr. Lewis's claims for

declaratory and injunctive relief; and his claim for attorney's fees and expert fees.

By **February 13, 2026,** Mr. Lewis must file a Third Amended Complaint consistent with

this Ruling and Order, or the case will proceed on only the claims surviving in the Second

Amended Complaint.

**SO ORDERED** at New Haven, Connecticut, this 23rd day of January, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE